604 So.2d 123 (1992)
STATE of Louisiana, Appellee,
v.
James C. CRANDELL, Appellant.
No. 23872-KA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1992.
*125 Ford E. Stinson, Jr., Joseph M. Clark, Sr., Asst. Indigent Defenders, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, James M. Bullers, Dist. Atty., Minden, for appellee.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
The defendant, James C. Crandell, was convicted of first degree murder, in violation of LSA-R.S. 14:30. Due to the jury's inability to unanimously recommend the death penalty, he was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The defendant appealed his conviction. For the reasons assigned below, we affirm.

FACTS
In the summer of 1989, the defendant, his female companion, Gail Willars, and her eight-year-old son, Zachary Willars, were temporarily living in Room 15 of the Beacon Manor Motel in Bossier City. On August 20, 1989, the day before the trio was to be evicted from the motel, Ms. Willars decided to prostituteherself to raise funds. She returned to Room 15 with the victim, Charles Parr, who had hired her to perform an act of prostitution. When she and Mr. Parr were disrobing, the defendant emerged from the bathroom (where he had been hiding with Zachary) and attacked Mr. Parr. The victim was subdued, bound, and put in a closet. At some point, he was struck on the head with a frying pan at least four times. Mr. Parr's wallet and jewelry were removed. The victim was still alive when he was placed in the closet, but he subsequently died as the result of his injuries. After cleaning up the motel room, the defendant, Ms. Willars, and Zachary fled in Mr. Parr's car.
The next morning, Mr. Parr's body was discovered in the closet by a motel maid. The Bossier City police issued warrants for the arrest of the defendant and Ms. Willars.
On August 29, 1989, the defendant and Ms. Willars were arrested in Chicago. Several of Mr. Parr's personal items were found in the house where the couple was apprehended. (Other items, such as his jewelry and car, which had already been sold by the defendant and Ms. Willars, were also recovered by the Chicago police.) That afternoon, Ms. Willars gave a statement in the presence of three Chicago detectives. Subsequently, the defendant and Ms. Willars waived extradition and were returned to Louisiana.
The defendant and Ms. Willars were charged with first degree murder, and the state sought the death penalty. The defendant entered pleas of not guilty and not guilty by reason of insanity. However, he subsequently withdrew his plea of not guilty by reason of insanity. (At a sanity commission hearing, the defendant was *126 found competent to stand trial and assist in his defense.)
On February 5, 1991, a hearing was held on the defendant's motion to recuse the district attorney's office. The motion was based upon the premise that a former indigent defender, who briefly represented the defendant, had thereafter been hired as an assistant district attorney. The court recused the assistant district attorney in question but declined to recuse the entire district attorney's office.
Trial began on February 11, 1991. The jury convicted Ms. Willars of the responsive verdict of second degree murder. However, the defendant was convicted of first degree murder. At the conclusion of the sentencing portion of the defendant's trial, the jury was unable to unanimously recommend the death penalty. Consequently, the defendant was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.
The defendant appealed. He assigned as error the following: (1) the trial court erred in allowing the prosecution to call a rebuttal witness for impeachment purposes when the defendant had not been given notice that his co-defendant had given a statement to the witness; (2) the trial court erred in not granting the jury's request during deliberations to review letters written by the defendant to his co-defendant; (3) the trial court erred in failing to grant the defendant's motion to recuse the district attorney's office; (4) the trial court erred in failing to grant the defendant's Batson challenges to the prosecutor's exclusion of several black prospective jurors; and (5) the trial court erred in finding that the co-defendant's son, who was nine years old at the time of trial, was competent to testify.

REBUTTAL WITNESS
The defendant contends that the trial court erred in allowing the state to call Detective Edward Winstead of the Chicago Police Department as a rebuttal witness to impeach the testimony of his co-defendant, Ms. Willars. He argues that he was not given notice that Ms. Willars' statement to the Chicago police was given in Detective Winstead's presence.
Following her arrest in Chicago, Ms. Willars was first questioned by Detective James Cassidy. After this initial interview, two other detectives, one of whom was Detective Winstead, entered the interrogation room and were present while Detective Cassidy took a written statement from Ms. Willars. Although these other detectives occasionally asked questions, Detective Cassidy was the primary interviewer. As such, he took notes of Ms. Willars' statements and authored the resulting report.
In the state's supplemental response to discovery filed on June 8, 1990, the state informed the defense that Ms. Willars had made statements to the arresting officer, Detective Cassidy. It also filed copies of the pages of Cassidy's report containing the summary of her verbal remarks. (However, the state did not provide the portions of the report signed by Detective Winstead.)
Detective Cassidy testified during the state's case in chief and then returned to Chicago. Ms. Willars subsequently took the stand in her own defense. The state thereafter presented the testimony of Detective Winstead to impeach portions of Ms. Willars' testimony as to her statements to the Chicago police. The defendant objected to the detective's testimony because he had not been given notice that Ms. Willars' statement had been made to Detective Winstead. The court overruled the objection and allowed the detective to testify.
An analogous situation arose in State v. Schrader, 518 So.2d 1024 (La.1988), habeas corpus denied, 904 F.2d 282 (5th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990). There, the defendant objected to the testimony of the victim's sister that she had heard an argument between the defendant and his wife wherein the defendant threaten to set fire to the house where the victim later died. He contended that the state had never divulged the sister's name during discovery. However, the court found that by informing the defendant that it intended to use statements he made to his wife, the state *127 had complied with the provisions of LSA-C.Cr.P. Art. 716(B), which governs what the state must disclose to the defendant about statements to be used at trial. The court stated:
La.C.Cr.P. art. 716(B) did not require the state to disclose the contents of the statement and the prosecutor was therefore in literal compliance with the discovery articles. As he argued at trial, "[a]ll the law says is [that] I got to tell him who the statement was made to. I don't have to tell him who heard it...."
518 So.2d at 1031.
In the present case, the defendant was given adequate notice that his co-defendant, Ms. Willars, had made statements to Detective Cassidy, the chief interviewer. These statements happened to have been made in the presence of Detective Winstead. As in Schrader, the state was not further required to inform the defense of the identities of every person who heard Ms. Willars make the statements. The defense was fully aware not only that the statements had been made, but they were also informed of their contents.
Furthermore, defense counsel for both the defendant and Ms. Willars effectively cross-examined Detective Winstead. They elicited testimony that he had not been present during the initial interview between Ms. Willars and Detective Cassidy and that he consequently had no way of knowing what was said during that interview. Also, he stated that about one week elapsed between the interview and the preparation of the written report which he and Detective Cassidy signed. Therefore, we find that the defendant suffered no prejudice.
This assignment of error is meritless.

JURY'S ACCESS TO WRITTEN EVIDENCE DURING DELIBERATIONS
The defendant contends that the trial court erred in refusing to grant the jury's request to review certain letters during deliberations.
Ms. Willars testified that the defendant had written several letters to her while they were both incarcerated awaiting trial. Three of these letters were admitted into evidence. After the jury retired to deliberate, it requested that it be allowed to review several documents, including the letters. Under the authority of LSA-C.Cr.P. Art. 793, the trial court refused to allow the letters to be taken into the jury room.
LSA-C.Cr.P. Art. 793 provides:
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict. [Emphasis ours.]
Jurors may inspect physical evidence in order to arrive at a verdict, but they cannot inspect written evidence to assess its verbal contents. The general rule, as expressed in LSA-C.Cr.P. Art. 793, is that a jury is not to inspect written evidence except for the sole purpose of a physical examination of a document itself to determine an issue which does not require the examination of the verbal contents of the document. For example, a jury can examine a written statement to ascertain or compare the signature, or to see or feel it with regard to its actual existence. State v. Perkins, 423 So.2d 1103 (La.1982).
The trial court correctly denied the jury's request to review the defendant's letters to Ms. Willars. Therefore, we find no merit to this assignment of error.

MOTION TO RECUSE DISTRICT ATTORNEY'S OFFICE
The defendant contends that the trial court erred in denying his motion to recuse the district attorney's office because of its employment of a former indigent defender who briefly represented the defendant.
Ford Stinson of the Indigent Defender's office was the defendant's original counsel *128 of record. In early August of 1990, Mr. Stinson took a brief leave of absence, returning to the Indigent Defender's office on November 1, 1990. At that time, he resumed his position as the defendant's attorney. During Mr. Stinson's absence, Spencer Hays, a part-time indigent defender, was the defendant's counsel of record.
On January 2, 1991, Mr. Hays became a part-time assistant district attorney. Based upon Mr. Hays' employment, a motion to recuse the district attorney's office was filed.
At the hearing on the defendant's motion to recuse the district attorney's office, Mr. Hays testified that he had never discussed the case with the district attorney or any other assistant district attorney, much less divulged information of any nature pertaining to the defendant. Furthermore, he had no involvement in the prosecution of the state's case against the defendant.
The trial court recused Mr. Hays from any participation in the present case, but otherwise denied the motion to recuse.
In an action to recuse the district attorney, the defendant has the burden of showing, by a preponderance of the evidence, that the district attorney has a personal interest in conflict with the fair and impartial administration of justice. State v. Edwards, 420 So.2d 663 (La.1982). The mere fact that an assistant district attorney previously represented a defendant in the same criminal matter does not ipso facto require the district attorney and other members of his staff to be recused. State v. Brown, 274 So.2d 381 (La.1973); State v. Bell, 346 So.2d 1090 (La.1977). The law presumes that the attorney will respect a client's confidences, and where counsel is not called upon to use against a former client any confidential knowledge gained through their former association, the accused suffers no prejudice. State v. Brazile, 231 La. 90, 90 So.2d 789 (1956); State v. Johnston, 546 So.2d 1231 (La.App. 1st Cir.1989); State v. Daughtery, 563 So.2d 1171 (La.App. 1st Cir.1990), writ denied, 569 So.2d 980 (La.1990).
The courts have consistently refused to recuse the district attorney and the rest of his staff when an assistant district attorney formerly represented the defendant. See State v. Brazile, supra; State v. Brown, supra; State v. Bell, supra; State v. Brown, 478 So.2d 600 (La. App. 2d Cir.1985); State v. Byrd, 491 So.2d 87 (La.App. 3d Cir.1986), writ denied, 506 So.2d 1219 (La.1987); State v. Johnston, supra; State v. Daughtery, supra. Also, see and compare State v. Edwards, supra; State v. West, 561 So.2d 808 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La. 1990).
The defendant cites State v. Allen, 539 So.2d 1232 (La.1989), in support of his argument. However, we find that case is distinguishable. In Allen, the assistant district attorney who participated in the prosecution of the defendant on charges of conspiracy to commit arson with intent to defraud had previously represented him in substantially related bankruptcy proceedings. The trial court denied the defendant's motion to recuse the assistant district attorney, and the Supreme Court reversed. However, in the present case, Mr. Hays himself was recused. Additionally, he had no involvement whatsoever in the prosecution of the case against the defendant.
This assignment of error is meritless.

BATSON CHALLENGES TO PROSPECTIVE JURORS
The defendant contends that the trial court erred in allowing the state to exercise peremptory challenges against five black members of the jury venire on racial grounds.
A determination of whether the exclusion of blacks from a jury is on the basis of race and therefore in violation of the Fourteenth Amendment's equal protection clause is guided by the principles enunciated in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The defendant must initially make a prima facie showing of purposeful discrimination. Then the burden shifts to the state to set *129 out race-neutral explanations for its peremptory challenges.
Although both the defendant and Ms. Willars are white, Batson has been expanded to apply even when the criminal defendant and the excluded juror are not of the same race. See Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); State v. Velez, 588 So.2d 116 (La. App. 3d Cir.1991), writs denied, 592 So.2d 408 (La.1992). (We note that Mr. Parr, the victim, was also white.)
Examination of the record indicates that the state exercised peremptory challenges against five black prospective jurors. However, the state accepted three other black jurors, two of whom were successfully challenged for cause by the defense.
The trial court found that the defendant had not made a prima facie showing of discrimination. Nevertheless, the trial court allowed the district attorney to set forth his reasons for the challenges.
Assuming arguendo, without conceding, that the defendant made a prima facie showing of purposeful discrimination, we find that this showing was adequately rebutted by the prosecutor's race-neutral reasons for exercising its peremptory challenges and that the reasons are supported by the record.
Patsy Rambo, who worked with the mentally retarded, stated that her absence from work would cause severe hardship for her co-workers. As a result of this and her expressed desire to be excused, the district attorney felt that she would not be able to give the trial her full attention. The husband of prospective juror Joyce Lynn Jones was involved in a "hotly contested" law suit against the Bossier Parish School Board in which the district attorney's office was representing the school board. The district attorney feared that this would impact adversely upon her ability to impartially consider the state's case.
The district attorney exercised a peremptory challenge against Teresa Blount because his office had previously issued warrants for her arrest on hot check charges. Additionally, she had two young children, and her service on a sequestered jury would have worked a hardship on her family. Mary Butler, who was also peremptorily challenged, had two prior hot check arrests, and the district attorney had prosecuted a member of her family for battery on a juvenile.
As to Jeffrey Robinson, the state referred to his prior traffic prosecutions, which included the offense of driving under suspension. The district attorney also stated that Mr. Robinson was slow in his responses and seemed uninterested in the proceedings.
Prior arrests and convictions of the prospective juror or family members are racially neutral reasons for exercising peremptory challenges. State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988), rehearing denied, 488 U.S. 976, 109 S.Ct. 517, 102 L.Ed.2d 551 (1988); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); rehearing denied, 495 U.S. 966, 110 S.Ct. 2579, 109 L.Ed.2d 761 (1990). So is a perceived lack of interest or unresponsiveness, State v. Wiley, 513 So.2d 849 (La.App. 2d Cir.1987), writ denied, 522 So.2d 1092 (La.1988).
All of the reasons given by the district attorney are racially neutral. Consequently, we find no Batson violations in the state's exercise of its peremptory challenges.
This assignment of error is without merit.

COMPETENCY OF NINE-YEAR-OLD WITNESS
The defendant contends that the trial court erred in finding that Zachary Willars, the nine-year-old son of his co-defendant, was competent to testify.
Every person of proper understanding is competent to be a witness except as otherwise provided by legislation. LSA-C.E. Art. 601. The competency of a person to be a witness is a question to be *130 determined by the trial court. LSA-C.E. Art. 104(A).
Proper understanding, not age, is the single general test of witness competency. LSA-C.E. Art. 601, Comment (b); State v. Bean, 582 So.2d 947 (La.App. 2d Cir.1991), writ denied, 586 So.2d 567 (La.1991). The previous rules set forth in LSA-R.S. 15:469 for determining the competency of witnesses under 12 years of age were abandoned with the passage of the Code of Evidence. See LSA-C.E. Art. 601, Comment (d).
Great deference is to be given to a trial court's determination of competency because of his opportunity to observe the witness. Such a determination is not to be overturned unless manifest error is shown. State v. Bean, supra.
Zachary, whose date of birth is March 30, 1981, was eight years old at the time of the murder and was approximately one month away from his tenth birthday at the time of trial. Before allowing the boy to testify before the jury, the trial court conducted a competency hearing. Zachary responded to various background questions presented to him by the court. Then the trial judge questioned him as to his understanding of the difference between a lie and the truth. Initially, Zachary testified that a lie was something that would get a person in trouble while the truth was something that helped a person. However, under further questioning, he expressed his understanding that he would get in trouble with the court if he did not tell the truth. He also stated that the truth was "good" while "something that's not the truth is bad, a lie."
Based upon the child's overall demeanor, the fact that he did not appear to have been coached, and his good grades in school, the court found Zachary to be an intelligent child who was competent to testify.
Our examination of the record demonstrates no error in the trial court's ruling. The trial court's observations of Zachary's demeanor are entitled to great deference. Also, during his questioning by the attorneys, Zachary answered the questions put to him coherently and rationally. The defense refers to one instance where the child answered "yes" to a question before the district attorney completed it. However, this was only a minor incident, and the majority of Zachary's answers were responsive to the questions asked and demonstrated sufficient understanding.
This assignment of error has no merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.