661 So.2d 673 (1995)
STATE of Louisiana, Appellee,
v.
Gail Sue WILLARS, Appellant.
No. 27,394-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1995.
Rehearing Denied October 26, 1995.
*676 Arax T. Brumfield, Jimmie Arnold Brumfield, Baton Rouge, for appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, for appellee.
Before HIGHTOWER, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The defendant, Gail Sue Willars, and her co-defendant James Crandell, were charged with the first degree murder of Charles H. Parr, a violation of LSA-R.S. 14:30. After a jury trial, Gail Willars was convicted of second degree murder, a violation of LSA-R.S. *677 14:30.1. The court sentenced her to life imprisonment. Willars now appeals her conviction and sentence. For the following reasons, we affirm.

FACTS
In the summer of 1989, the defendant, Gail Willars, along with James Crandell and her eight-year-old son, Zachary Willars, traveled to Bossier City. They temporarily moved into Room 15 of the Beacon Manor Motel and lived there for several weeks.
Eventually, Willars and Crandell began to run out of money. The motel management ordered them to vacate the room by Monday, August 21, for failure to pay the rent. Over a three day period, Willars attempted to contact her father and friends in order to raise funds. Crandell and Willars also discussed the possibility of her working as a prostitute to earn money. Willars testified that on several occasions she talked to another tenant at the motel about prostitution and spoke with several potential customers, but she was unwilling to prostitute herself at the time.
On Sunday, August 20, 1989, Willars made several attempts to telephone her father and friends. On her way to a pay phone, Charles Parr approached her several times. Willars testified that prior to making a final trip to the phone, she instructed Crandell to leave the room with Zachary if she did not return in a few minutes. She stated that her plan was to bring a customer back to the room if she was unable to reach anyone. During trial, Willars described the following sequence of events:
She was unable to contact her friends. Mr. Parr then approached her at the pay phone and offered her $30.00 to perform oral sex. She rode back to the motel with Parr, they entered room 15 and Parr then asked for more than oral sex and she refused. An argument ensued and Parr grabbed Willars by the shoulders and picked her up off the floor. At this point, Crandell entered the room from the bathroom and surprised her. Crandell hit Parr across the back with a stick and a struggle ensued. The fighting stopped when Crandell produced a knife. Crandell bound Parr's hands with duct tape and put him in a closet. Parr eventually loosened his bindings, escaped from the closet and began to struggle with Crandell again. Willars told the men that her son was in the bathroom and she asked them to stop fighting. Parr paused and Crandell grabbed a cast iron frying pan and hit Parr over the head several times. Crandell dragged Parr back into the closet. Willars testified that Crandell told her that Parr was dead, but she thought he was still alive.
Willars then helped Crandell clean the room. She wiped blood from the mirrors and the carpet and she removed blood-stained sheets from the bed. Willars and Crandell loaded their belongings into Parr's car and drove with Zachary to Chicago, discarding several items along the way. Once in Chicago, the three stayed with Hank and Roberta Alders. Crandell pawned several of Parr's belongings to raise money.
On Monday, August 21, 1989, two motel employees found Parr's body in room 15. Dr. George M. McCormick, II, the Caddo Parish coroner, performed an autopsy and testified that Parr had suffered multiple injuries. Parr had abrasions on his knees and bruises under his arms that were consistent with being dragged. Parr had several bruises and abrasions on his head that were consistent with blows from a blunt instrument with ridges or edges. Dr. McCormick testified that there were a minimum of four blows to the head and that Parr had died of heart failure due to swelling of the brain. The coroner also stated that death occurred more than thirty minutes, and perhaps as long as an hour, after the time of injury. Parr also had what Dr. McCormick described as defensive wounds, which indicated that he had been involved in an altercation.
On August 29, 1989, Chicago police officers, in cooperation with the Bossier Police Department, arrested Willars and Crandell at the Alders' residence in Chicago. The police found several of Parr's belongings, including a gun, at that location. Mrs. Alders testified that both Crandell and Willars told her that they were running from the law because they had killed a man. Parr's jewelry *678 was recovered from a jewelry store in Chicago.
Willars' eight-year-old son, Zachary, was in the bathroom with Crandell when Willars and Parr entered the motel room. At trial, Zachary testified that Crandell jumped out of the bathroom with a knife in his hand and that Willars hit Parr on the head with a stick. Zachary also stated that Crandell put tape around Parr's hands and placed him in the closet, but later Crandell took him out of the closet because he was making noise. Zachary testified that Willars gave the frying pan to Crandell, who began hitting Parr on the head. Zachary said that he saw blood hit the mirrors and the blankets. At that point, Willars closed the bathroom door and Zachary was unable to see anything more. Zachary testified that he never saw Parr hit Crandell or Willars. He also stated that he saw Willars throw the bloody blankets out of the car.
Willars and Crandell were tried together in February 1991. Crandell was convicted of first degree murder and Willars was convicted of second degree murder. On October 18, 1994, the trial court granted Willars' post-conviction application to file an out-of-time appeal.

DISCUSSION
Sufficiency of the Evidence (Assignment of Error No. 3)
When issues are raised on appeal concerning the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The sufficiency issue is reviewed first because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992).
Under Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Hearold, supra; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (La.1992).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, Sec. 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied 499 So.2d 83 (La.1987).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of such evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
Second degree murder is defined as the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm, or when the offender is engaged in one of the listed felonies. LSA-R.S. 14:30.1. A person may be convicted of an offense even if he has not committed the actual offense if he is found to be a principal. A principal is defined as:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its *679 commission, or directly or indirectly counsel or procure another to commit the crime, are principals. LSA-R.S. 14:24.
Thus, in order to find Willars guilty of second degree murder, the jury must have found either that she specifically intended to kill Parr or inflict great bodily harm, or that she was engaged in the perpetration of a robbery along with Crandell, when Parr was killed. Robbery is defined as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by the use of force or intimidation. LSA-R.S. 14:64, 14:64.1, 14:65.
The state argues that the evidence established that Willars and Crandell acted in concert to lure Parr into the motel room for the purpose of robbing him, and that during this robbery the victim received injuries which resulted in his death. The state asserts that Willars was a principal to the robbery and murder of Parr.
Willars argues that the state failed to prove that she had the specific intent to kill or inflict great bodily harm. She asserts that her intent was to engage in prostitution and not to harm or rob Parr. She further argues that the robbery did not occur until after the fatal blows were struck, and therefore the evidence does not support a second degree murder conviction.
The state proved by direct evidence that Parr was robbed of his cash and jewelry and that he died as a result of several blows to the head with a blunt object. The state's theory of the case with respect to Willars was that, although she did not strike the fatal blows, she did lure the victim into the motel room with the intent to rob or inflict great bodily harm. The state presented the following circumstantial evidence to prove that Crandell and Willars acted in concert.
First, the state introduced evidence that Willars and Crandell needed money to pay for their motel room. This is evidence of a motive to commit robbery.
Second, Zachary testified that when he and Crandell hid in the bathroom prior to Willars' return to the room, Crandell already held a knife in his hands. These are circumstances from which a reasonable trier of fact could conclude that Crandell and Willars planned to surprise the person whom Willars brought to the room.
Third, Zachary testified that Willars struck Parr with a stick after Crandell emerged from the bathroom and that she handed Crandell the frying pan. This is further evidence of Willars' intent and of her participation in the crime.
Fourth, Willars admitted that she helped clean the room after the murder and discarded evidence during the drive to Chicago. These actions are evidence that Willars attempted to conceal the crime and avoid capture.
Finally, the state introduced evidence that Crandell and Willars fled to Chicago immediately following the murder. Flight is a circumstance which may be used by the trier of fact to infer guilty knowledge. State v. Fuller, 418 So.2d 591 (La.1982); Bellamy, supra.
In a similar case, the Fifth Circuit Court of Appeal found sufficient direct and circumstantial evidence to affirm the defendant's conviction of second degree murder. State v. Horne, 554 So.2d 820 (La.App. 5th Cir.1989). In Horne, the state introduced circumstantial evidence to show that the defendant and her two roommates were without funds, that they faced imminent eviction, and that the defendant had lured the victim from a bar to the apartment, where he was murdered and robbed. Although there was no evidence that the defendant participated in the actual killing or robbery, she was found to be a principal in the crimes because she provided the victim.
In the present case, Willars did not strike the fatal blows nor was there evidence that she actually took anything of value from the victim's person. There was, however, circumstantial evidence from which a jury could decide that Willars and Crandell acted in concert to perpetrate a robbery scheme. A reasonable trier of fact could conclude that Willars lured the victim into the motel room so that he could be robbed. Zachary's testimony that Crandell lay in wait with a knife, that Willars hit Parr with a stick and handed *680 a skillet to Crandell, and Willars' admission to cleaning the room and fleeing to Chicago are all circumstances from which a jury could conclude that Willars was a principal to the robbery and resulting murder of Charles Parr.
The state also produced evidence that Willars possessed the specific intent to inflict great bodily harm. Specific intent is a state of mind that need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Brown, 618 So.2d 629 (La.App. 2d Cir.), writ denied, 624 So.2d 1222 (La.1993). Zachary testified that he saw his mother hit the victim with a stick and saw her give Crandell the frying pan, which ultimately became the murder weapon. From these circumstances a jury could infer Willars' specific intent to inflict great bodily harm.
When viewed in the light most favorable to the prosecution, there is sufficient evidence, direct and circumstantial, for a reasonable trier of fact to conclude that Willars acted as a principal to the robbery and murder of Charles Parr, or that she possessed the specific intent to inflict great bodily harm upon Parr. Therefore, this assignment of error is without merit.
Ineffective Assistance of Counsel (Assignment of Error No. 2)
Willars argues that her lawyer's performance deprived her of the effective assistance of counsel.
The issue of ineffective assistance of counsel is more properly raised in a motion for post-conviction relief rather than by direct appeal. The reason for this process is to allow for a full evidentiary hearing on the allegations of ineffective assistance. State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir.), writ denied, 505 So.2d 1139 (La.1987); State v. Barnes, 365 So.2d 1282 (La.1978). However, if the record fully discloses the evidence necessary to decide the issue, it may be considered on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Smith, 25,841 (La.App. 2d Cir. 2/23/94), 632 So.2d 887. The record in this case is sufficient to rule on Willars' allegation of ineffective assistance of counsel. However, some of her arguments are more properly deferred for post-conviction relief.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). The U.S. Supreme Court, in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established a two-prong test to determine ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient such that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Secondly, defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, with a reliable result. Strickland, supra at 687, 104 S.Ct. at 2064.
The relevant inquiry is whether counsel's representation fell below the standards of reasonableness and competency required by prevailing professional standards for attorneys in criminal cases. Strickland, supra; State v. Moore, 575 So.2d 928 (La. App. 2d Cir.1991). There is a strong presumption that the conduct of counsel falls within the wide range of reasonable professional assistance. Strickland, supra. The defendant bears the burden of proving that certain acts or omissions by his counsel were deficient and that this deficiency led to an unreliable outcome. State v. Wry, supra. The defendant must prove actual prejudice before relief will be granted. It is not enough to show that the error had some conceivable effect on the trial's outcome. To prevail under the dual test of Strickland, the defendant must show that but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. State v. Grissom, 624 So.2d 476 (La.App. 2d Cir.1993).
First, Willars alleges that defense counsel failed to object to the admission of inculpatory statements made by Willars, although the trial court had ruled they would be excluded. On February 13, 1991, prior to opening statements, the district attorney *681 filed a notice of intent to use statements made by Willars and Crandell to Roberta Alders, Henry Alders and Lorrie Page. That same day, the defense attorneys filed a joint motion in limine requesting that those statements be suppressed because the state was aware of the statements prior to February 12, 1991, but failed to notify the defense of its intention to use them. The record does not contain a transcript of a hearing on this matter. However, the court minutes indicate that the matter was argued and that the trial court ruled that the statements made by the co-defendants to Roberta Alders and Lorrie Page could not be used in the state's case-in-chief.
During direct examination of Mrs. Alders, the following exchange took place:
Q: Now, pertaining to them coming to Chicago, what did they tell you?
A: They both at separate times said that they had come to Chicago to leave Gail's son Zachary with my husband and I because they had had to kill a man and were running from the law.
Neither defense counsel objected to this question or answer. There was no cross-examination of Mrs. Alders by either attorney.
The defense counsel's failure to object to the introduction of Willars' statement does not satisfy the second prong of the Strickland test. Willars admitted at trial that she was present when Parr was killed and that she fled with Crandell to Chicago. Her defense was that she did not possess the intent to inflict great bodily harm or to commit robbery. Although the statement recounted by Mrs. Alders was improperly introduced at trial, it did not supply any new information about the crime to the jury. Thus, Willars has failed to show that, but for the defense counsel's error, there is a reasonable probability that the outcome of the trial would have been different.
Willars also contends that her lawyer failed to call available witnesses at trial. The defense counsel called as witnesses the investigating officer, William Ray, Willars and her father, Gerald Sisco. The defense counsel elicited testimony from Willars concerning her intent to commit prostitution and her lack of intent to harm the victim. Sisco testified concerning Zachary's mental capability and the child's belief that his mother had killed his father. Sisco also testified that Crandell exercised control over Willars. She does not specify any additional persons who could have been called to testify. This argument does not establish ineffective assistance of counsel.
Willars asserts that defense counsel erred in failing to object to the trial judge's ruling that Zachary was competent to testify. Defense counsel argued that Zachary was incompetent to testify and subsequently reserved an objection to the court's ruling finding the witness competent. The trial counsel was not deficient in this regard.
Willars further argues that her counsel erred in failing to attack Zachary's credibility. She points to several discrepancies between Zachary's testimony and the physical evidence as possible means to cast doubt on his credibility. It is a reasonable trial strategy not to harshly question a young witness. Defense counsel challenged Zachary's credibility during closing argument. Further, counsel pointed out the discrepancies in Zachary's testimony and argued that the young child was susceptible to suggestions from the district attorney.
In sum, the record fails to support Willars' allegation that her trial counsel was deficient or that counsel's deficiencies deprived her of a fair trial under the Strickland standard.
Several of Willars' allegations of ineffective assistance of counsel are not evident from the record. For example, she alleges that defense counsel refused her requests to file motions for a speedy trial and for severance. There is no evidence in the record concerning her requests. Willars also alleges that a conflict of interest existed because she refused to sign over book rights to her court appointed attorney. Such allegations require additional evidence for resolution. Willars' remedy is to seek post-conviction relief in the trial court, where the circumstances and validity of these allegations can be fully explored in an evidentiary hearing.
*682 Witness Competency (Assignment of Error No. 4)
Willars argues that the trial court erred by finding Zachary Willars competent to testify.
Every person of proper understanding is competent to be a witness except as otherwise provided by legislation. LSA-C.E. Art. 601. The question of a person's competency to be a witness is determined by the trial judge. LSA-C.E. Art. 104(A).
Proper understanding, not age, is the test of competency for any witness and great weight is given to the trial judge's determination of competency because of his opportunity to see and hear the witness. The trial court's decision should not be overturned absent manifest error. State v. Bean, 582 So.2d 947 (La.App.2d Cir.), writ denied, 586 So.2d 567 (La.1991).
Zachary was eight years old at the time of the murder and was nine years and eleven months old at the time of trial. During the competency hearing, the trial judge questioned Zachary about his age, his grades in school, his living arrangements and the length of time he had resided in Louisiana. Zachary answered these questions in a polite and responsive manner. When asked whether he knew the difference between the truth and a lie, Zachary first responded that "a lie is something that gets you in trouble. The truth can help you." Upon further questioning, Zachary stated that the "truth is good and something that's not the truth is bad, a lie." At that point, the judge ruled that based on his overall demeanor, his grades and the fact that he did not appear coached, Zachary was competent to testify.
Willars states that the trial court refused to allow the attorneys to question Zachary. The trial court did ask if the defense attorneys wanted to question the witness, and they did not respond. However, Willars' lawyer did request that the court question Zachary further about the difference between the truth and a lie. The trial court complied with this request.
The trial court's evaluation of Zachary's demeanor is entitled to great deference. Bean, supra. The record does not indicate that the trial court was clearly wrong in ruling that Zachary was competent to testify. The issue of Zachary's competence was also raised in Crandell's appeal and this court held that the trial court did not err by allowing the child to testify. State v. Crandell, 604 So.2d 123 (La.App.2d Cir.1992).
Willars also states that her attorney failed to introduce Zachary's medical records and to point out the boy's belief that his mother killed his father. The record contains a 1988 psychiatric assessment of Zachary, who exhibited behavioral problems at school following the death of his father. This evaluation stated that there was no indication of any thought disorder and that Zachary's memory was fair. After reviewing these medical records and the trial transcript of the competency hearing, we cannot say the trial court abused its discretion in ruling the witness competent to testify.
This assignment is without merit.
Severance and Speedy Trial (Assignments of Error Nos. 5 & 6)
Willars argues the trial court erred in denying an oral motion to sever. The record does not contain a motion to sever from either of the defendants. Although the issue of severance was raised during a hearing on Crandell's motion for a continuance, no formal motion to sever was ever made. However, the trial court granted a continuance and ruled that Willars' case would also be continued. The court's ruling implicitly denied a severance, but the defense did not object.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. State v. Minnifield, 475 So.2d 108 (La.App.2d Cir.1985); LSA-C.Cr.P. Art. 841. This assignment of error is without merit.
Willars also contends that she was denied a speedy trial.
Willars was indicted on September 5, 1989. Several continuances were granted to her co-defendant Crandell, who sought the appointment of a sanity commission. The case was set for trial in September, 1990 and the trial began on February 11, 1991, approximately *683 17 months after the indictment. There is no indication in the record as to why the trial was continued from the September 1990 date. The state points out that several attorneys involved in the proceedings were candidates for public office in the fall of 1990, including Willars' counsel.
Willars did not file a motion requesting a speedy trial nor did she file a motion to quash based upon the denial of a speedy trial. There is no indication that Willars was prejudiced by the delay, nor does she assert that her trial preparation was impaired. Therefore, this assignment is without merit.
Jury Instructions (Assignment of Error No. 9)
Willars argues the trial court gave erroneous jury instructions that confused the issue of manslaughter and failed to explain the burden of proof in cases based on circumstantial evidence. She also contends that the trial judge should have instructed the jury to consider the time element involved in the commission of the crime. She maintains that because nothing was taken from the victim until after the fatal blows were struck, there was no intent to rob prior to death, and her act could not be second degree murder.
LSA-C.Cr.P. Art. 802 requires the trial court to charge the jury as to the law applicable to the case. This article obligates the trial judge to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Jackson, 450 So.2d 621 (La.1984); State v. Harris, 26,411 (La.App.2d Cir. 10/26/94), 645 So.2d 224.
The record indicates that the trial court did instruct the jury about direct and circumstantial evidence and its explanation of manslaughter conformed to the statutory language defining the offense. In response to jury inquiries, the trial court twice repeated the instructions regarding first and second degree murder and manslaughter. There is no indication that the jury's requests for clarification were unusual during a deliberation in a capital case.
Finally, there is no support for Willars' argument that the trial court should have instructed the jury as to the time element of the offense. The jury could conclude that the intent to commit robbery existed at the time the fatal blows were struck, and therefore the killing occurred during the perpetration of the crime.
This assignment of error is without merit.
Scope of Argument (Assignment of Error No. 7)
Willars argues that the district attorney erroneously commented on facts not introduced into evidence during his closing argument. She also asserts that the state's remarks concerning Zachary were improper.
LSA-C.Cr.P. Art. 774 states that the closing argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice and the state's rebuttal shall be confined to answering the argument of the defendant.
Willars testified about a struggle between Crandell and Parr. She talked about her concern for Zachary as a motivation for some of her actions. After reviewing the trial transcript, we are convinced that there is no merit to Willars' argument that the state violated Article 774. This assignment of error lacks merit.
Inculpatory Statements (Assignment of Error No. 8)
Willars argues that the trial court erred in allowing Mrs. Alders to testify about alleged inculpatory statements. During the state's direct examination, Mrs. Alders testified that Crandell and Willars said that they came to Chicago to leave Zachary because they had to kill a man and were running from the law.
Willars asserts that this statement should have been excluded because the district attorney failed to notify defendants of the statement during pre-trial discovery. Prior to opening statements, the defendants sought and were granted an order from the trial court to exclude the statement from the state's case-in-chief. However, the defense *684 did not object or request an admonishment when Mrs. Alders recounted the statement.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. LSA-C.Cr.P. Art. 841. This assignment of error lacks merit.
Assignments of Error Nos. 1 and 11
Willars states that the jury was not fair or impartial because: 1) the jury did not represent a cross section of society, 2) the court allowed use of peremptory challenges, and 3) an entire class and race were excluded from the jury. Willars did not specify which race or class was excluded or specify which jurors should have been excused for cause.
A mere statement of an assignment of error in a brief does not constitute briefing of the assignment. State v. Williams, 632 So.2d 351 (La.App. 1st Cir.1993), writ denied, 94-1009 (La. 9/2/94), 643 So.2d 139; State v. Toney, 26,711 (La.App.2d Cir. 3/1/95), 651 So.2d 387. Assignments of error neither briefed nor argued are deemed abandoned. URCA Rule 2-12.4. Furthermore, this issue was raised in the co-defendant's appeal and found to be without merit. State v. James Crandell, supra.
Willars also contends that the trial court erred in not accepting as true uncontroverted evidence contained in two letters written by Crandell clearing her of the murder charge. Willars read to the jury two letters which Crandell wrote to her while they were incarcerated and awaiting trial. She asserts that this evidence was unchallenged and that the trial court should have accepted it as true. She cites no authority to support this assignment.
A mere restatement of an assignment of error in a brief, without argument or citation of authority, does not constitute the briefing of the assignment. Williams, supra; Toney, supra. Assignments of error neither briefed nor argued are deemed abandoned. URCA-Rule 2-12.4.
Error Patent (Assignment of Error No. 10)
LSA-C.Cr.P. Art. 930.8(C) provides that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The sentencing transcript is not included in the record submitted to this court. Although the failure to comply with Article 930.8(C) is not grounds for reversal of the sentence or a remand, the notice required by that article must be satisfied. LSA-C.Cr.P. Art. 921.
The trial court is directed to review the sentencing transcript to verify compliance with this article. If the required notice was not provided to the defendant, the district court is directed to give defendant written notice of the prescriptive period for post-conviction relief within ten days of the rendition of this opinion and to file proof of defendant's receipt of such notice in the record of the proceedings. State v. Smith, 600 So.2d 745 (La.App.2d Cir.1992).

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, NORRIS, HIGHTOWER, WILLIAMS and STEWART, JJ.
Rehearing denied.