STEWART, J.
hThe defendant, Freddie Lee Cook, was charged via bill of information with one count of aggravated incest, a violation of La. R.S. 14:78.1, occurring on March 19, 2011. The state later filed an amended bill *994 to include dates ranging between November 25, 2007, and March 19, 2011. The defendant pled not guilty and was convicted as charged by a jury. He was subsequently adjudicated a fourth felony offender and sentenced to the mandatory term of life imprisonment. The defendant has filed the instant appeal, asserting two assignments of error. Finding no error in the trial court’s findings, we affirm.
FACTS
On May 20, 2011, the state filed a bill of information charging the defendant with one count of aggravated incest of his step-granddaughter, S.G. She was 16 at the time of the defendant’s arrest. The following facts were adduced at trial.
The defendant met S.G.’s grandmother, Mae Cullens, while he was serving a ten-year sentence for his 1996 convictions of aggravated incest involving his biological daughter, Kimberly Cook, and molestation of a juvenile involving his stepdaughter by an ex-wife. Apparently, Ms. Cullens was involved in a prison ministry, and had ministered to the defendant during his incarceration. Shortly after his release from prison, the defendant and Ms. Cullens married in 2001.
Initially, Ms. Cullens’ daughter, Edda Cullens, opposed the marriage because the defendant was a convicted sex offender. Edda later began to trust the defendant, believing he “found the Lord” and had changed. In fact, | ?she allowed the defendant to drive her children to and from school and she allowed the defendant to interact with her children without proper supervision.
Shelley Hoard, who attends the same church as S.G., is a registered nurse with behavioral health experience. She conducts assessments on victims of depression, incest, and sexual abuse. Specifically, she works with children who are victims of sexual abuse. Ms. Hoard testified that she noticed a change in S.G.’s behavior, approached her, and asked if there was something wrong. Although S.G. did not report any specific abuse at that time, she did present these questions to her:
What if somebody who is very nice to your family and doing good things for your family but they are doing bad things to you? What should I do?
Ms. Hoard advised S.G. to report it. After this exchange, Ms. Hoard relayed this information to Corporal Kalinciar Hunter, the resource officer at Richwood High School.
Corporal Hunter, who is employed by the Ouachita Parish Sheriffs Office (“OPSO”), testified that she is responsible for “keeping order” at the school, and that she is familiar with all of the students who attend Richwood High School. When Ms. Hoard reported the suspected abuse to Corporal Hunter, she approached S.G. on March 10, 2011, to ask her if anything was “going on in the home.” S.G. denied that any abuse was taking place, further stating, “It was no big deal. I am fine.” Corporal Hunter forwarded her report to OPSO’s investigation department and Child Protective Services (“CPS”). Corporal Hunter testified that Patrick Staten, from CPS, Iscame to Richwood to interview 5.G. After this interview, Mr. Staten expressed his intent to contact S.G.’s mother, Edda.
Corporal Hunter testified that on April 6, 2011, a meeting took place between herself, Edda, and S.G., upon Edda’s request. During this meeting, Edda relayed that Mr. Staten had contacted her to inform her of the suspected abuse. She further explained that her reason for requesting this meeting was because S.G. felt more comfortable talking to Corporal Hunter. S.G. told Corporal Hunter that her step- *995 grandfather, the defendant, had been sexually abusing her since she was 11 years old. She expressed that she was tired of the abuse and the secrets, and as a result had taken a bottle of pills. Corporal Hunter testified that S.G. was visibly upset, crying and shaking, during the entire meeting.
Corporal Hunter noted that S.G., who was usually a pleasant and “high achieving” student, began to exhibit disrespectful behavior toward authority, talk excessively in class, and participate in fights. At the conclusion of her testimony, Corporal Hunter testified that she witnessed the defendant dropping S.G. off late to school some mornings, and picking her up some evenings. At times, the defendant would also check S.G. out of school early.
Sergeant Daryl Frost of the OPSO testified that he received a report from Corporal Hunter on March 14, 2011, but did not act at that time because S.G. had denied that any abuse had taken place. When Sergeant Frost was contacted on April 13, 2011, after S.G. admitted that the abuse had taken place, he obtained a warrant and arrested the defendant. A rape |4kit was not conducted on S.G. because there had not been any sexual contact within the previous 72 hours.
Alfred “Hatchet” Carter, the defendant’s friend and next door neighbor, testified about an incident that occurred at his home, while a birthday party took place at the defendant’s home. During the party, the defendant came over to Mr. Carter’s house to watch movies. Shortly after the defendant arrived, S.G. came over to Mr. Carter’s house, looking for him. Mr. Carter went to the restroom, only to return approximately ten minutes later to witness the defendant and S.G. on the floor. S.G. and the defendant jumped up, straightening their clothes.
When asked if he had witnessed any sexual act occur between the defendant and S.G., Mr. Carter denied seeing any sexual act. However, Officer Charles Roark of the Monroe Police Department testified that he was asked to administer a polygraph test to Mr. Carter. Before the test was administered, Mr. Carter interrupted Officer Roark and informed him that he had, in fact, witnessed S.G. and the defendant having sex on the floor in his home.
S.G., who was 17 years old at the time of trial, testified that she initially denied the abuse because she did not want to get anyone in any trouble and she did not want anyone to know. She explained that she was afraid that her mother would kill the defendant if she found what he was doing, her mother would consequently go to jail, and that she would be alone.
IsS.G. stated that the defendant, whom she called “Brother Fred,” was a minister who conducted church in his home for their family. She testified when she was 11 years old, the defendant owned a silver van and had offered to teach her to drive in the Monroe Civic Center parking lot. During these outings, the defendant would offer to pay her to let him “touch her private area” and perform oral sex on him. She also recalled the incident that occurred at Mr. Carter’s house, stating that she and the defendant did have “sexual contact” while Mr. Carter was out of the room. S.G. also testified that the defendant would stop at various places on the way to school so that they could engage in sexual activity.
S.G. further testified she was 14 years old the first time she and the defendant had actual intercourse. Prior to that time, the defendant would attempt penetration, but he would stop when she told him it was hurting. This abuse continued until *996 March 2011, at which time the S.G. was 16 years old.
The defendant was found guilty of aggravated incest, adjudicated a fourth felony offender, and sentenced to life imprisonment. He now appeals.
LAW AND DISCUSSION

Sufficiency of the Evidence

In this assignment of error, the defendant asserts that the evidence was insufficient to support his conviction. He contends that he was convicted solely on the testimony of S.G., and that her testimony was inconsistent with that of other witnesses. More specifically, the defendant 1 fiargues that he did not own a silver van at the time that S.G. alleged he sexually abused her. He also notes that S.G. denied the allegations twice before disclosing them to Corporal Hunter. Further, the defendant asserts that no physical evidence existed to support the conviction.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2 Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Under the Jackson v. Virginia standard, we review the record in the light most favorable to the prosecution to determine whether the evidence was sufficient to convince any rational trier of fact that all the essential elements of the crime had been proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation 17of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d *997 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. |SA reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
Credibility determinations are the province of the trier of fact. State v. Johnson, 38,927 (La.App.2d Cir.11/23/04), 887 So.2d 751; State v. Powell, 27, 959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App.2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678.
Thus, in order for the defendant’s conviction to be upheld, the record must establish that the state proved beyond a reasonable doubt all of the Inessential elements of aggravated incest. La. R.S. 14:78.1, aggravated incest, provides in pertinent part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relative: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a chile into prostitution, or any other involvement of a chile in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
D. (1) A person convicted of aggravated incest shall be fined an amount not to exceed fifty thousand dollars, or imprisoned, with or without hard labor, for a term not less than five years nor more than twenty years, or both.
(2) Whoever commits the crime of aggravated incest on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years *998 nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
In the instant case, S.G., who was 17 at the time of trial, testified that the defendant sexually abused her over a span of several years. As stated in the facts section above, she testified when she was 11 years old, the defendant owned a silver van and had offered to teach her to drive in the Monroe Civic Center parking lot. During these outings, the defendant 1 inwould offer to pay her to let him “touch her private area” and perform oral sex on him. Corroborating Mr. Carter’s testimony, S.G. recalled the incident that occurred at his house, stating that she and the defendant did have “sexual contact” while Mr. Carter was out of the room.
The testimony of the victim of aggravated incest is sufficient to support a conviction. State v. Simpkins, 44,197 (La.App.2d Cir.5/13/09), 12 So.3d 1021, writ denied, 2009-1229 (La.2/5/10), 27 So.3d 296, and writ denied, 2009-1539 (La.3/5/10), 28 So.3d 1004. Slight discrepancies, such as the color of the vehicle, or whether S.G. initially denied that the sexual abuse took place to protect her mother, do not cast doubt on S.G.’s credibility. After determining that there are no internal contradictions regarding S.G.’s testimony and that her testimony does not contradict any physical evidence, we find that S.G.’s testimony, in addition to other evidence presented, sufficiently supported the defendant’s aggravated incest conviction. This assignment of error is merit-less.

Ineffective Assistance of Counsel

In this assignment of error, the defendant argues that his counsel’s performance was deficient during Ms. McNeal’s direct examination. Ms. McNeal, the defendant’s cousin, spiritual counselor, and minister, testified that she counseled the defendant since the time he met and married Ms. Cullens. When defense counsel questioned Ms. McNeal about the counseling, she testified:
Q: Were there problems in their relationship?
A: Yes.
| UQ: And they consulted you concerning those problems?
A: Yes. He did.
Q: Did any of the problems involve the grandchildren?
A: Yes.
The state objected, arguing that it was hearsay, and a sidebar was held. Then, the jury was removed and argument was presented on the objection. The trial court determined that the evidence would be inadmissible, and the defense counsel withdrew the question. The defendant contends that the jury heard the answer to the question before defense counsel withdrew the question. He believes this action “bolstered” the state’s case because the defense failed to elicit the actual issue with the grandchildren, and made it appear as though his problem with the grandchildren was sexual in nature.
As a general rule, a claim of ineffective is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Ellis, 42,520 (La.App.2 Cir.9/26/07), 966 So.2d 139, writ denied, 2007-2190 (La.4/4/08), 978 So.2d 325. However, when the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2 Cir.9/27/95), 661 So.2d 673.
The right’ of a defendant in a criminal proceeding to the effective assistance of *999 counsel is mandated by the Sixth Amendment to the U.S. [^Constitution. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The assessment of an attorney’s performance requires that his conduct be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to the trial court’s judgment, tactical decisions and trial strategy. There is a strong presumption that trial counsel has exercised reasonable professional judgment. State v. Tilmon, 38,003 (La.App.2 Cir.4/14/04), 870 So.2d 607, writ denied, 2004-2011 (La.12/17/04), 888 So.2d 866.
Once the attorney’s performance is found to have been deficient, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, supra. The defendant must prove the deficient performance caused him an actual prejudice so severe that, but for his counsel’s deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9.
Ineffective assistance claims must both identify specific acts or omissions by counsel and state how these actions resulted in actual prejudice so severe that the defendant was denied a fair trial. Strickland, supra; State v. Jordan, 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123, writ denied, 2002-1570 (La.5/30/03), 845 So.2d 1067.
The defendant argues that his counsel asked Ms.' McNeal whether the problems in his marriage stemmed from Ms. Cullen’s grandchildren, without forming a proper plan regarding how to connect this information to the next link in the chain of evidence he was attempting to adduce. Even though the state’s objection led to the trial court ruling that the evidence was inadmissible, and the defense counsel withdrew the question, the jury did hear the answer. The defendant believes that his counsel’s action, or lack thereof, strengthened the state’s assertion that any problems with his step-grandchildren were sexual in nature. He concluded his argument with the statement that “had the defense not asserted that he had marital problems that involved his grandchildren, the jury would have likely returned a verdict of not guilty.”
The defendant has not proven that his trial counsel’s performance prejudiced him in a way that deprived him of his right to a fair trial. There is no showing that had his counsel not presented the question regarding the defendant’s relationship woes regarding his grandchildren, he would not have been convicted of the instant offense.
The defendant has not met his burden pursuant to Strickland v. Washington, supra, of proving that his counsel’s performance was deficient and that as a result, he was deprived of a fair trial. This assignment of error bears no merit.
I ^CONCLUSION
For the reasons assigned, we affirm the defendant’s conviction and sentence.
AFFIRMED.