**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-31047

CARTER PAUL PETERSON,

Petitioner-Appellant,

VERSUS

BURL CAIN,

Respondent-Appellee.

Appeal from the United States District Court
For the Western District of Louisiana

August 19, 2002

Before JOLLY, DeMOSS, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Petitioner Carter Paul Peterson ("Peterson"), a Louisiana state prison inmate, appeals the ruling of the district court, seeking federal *habeas corpus* relief. He presents two issues for review. First, whether the United States Supreme Court's opinion in *Campbell v. Louisiana*, 523 U.S. 392 (1998), announced a new rule of constitutional criminal procedure under 28 U.S.C. § 2244(d)(1)(c). Second, whether such a "new rule," if it exists, is

1

retroactively applicable to a case such as his on collateral review. Because we find that no new rule is stated in *Campbell*, we AFFIRM the judgment of the district court, although on alternative grounds.

## I. Background.

Peterson was convicted of second-degree murder in 1981 in Louisiana state court and was sentenced to life imprisonment. His conviction and sentence were affirmed on appeal and became final in 1982. He did not seek collateral relief at that time, but filed a state application for post-conviction relief on September 24, 1998. His application was based on *Campbell*, which announced on April 21, 1998, that a white defendant has standing to raise equal-protection and due-process challenges to discrimination against African-Americans in the selection of a grand jury. *Id.* at 400-03. He argued that the selection process for grand jury forepersons in Lafayette Parish, Louisiana, violated constitutional due process and equal protection requirements by systematically excluding African-Americans; that LA. CODE CRIM. PROC. ANN. art. 413 B (West Supp. 1997),[1] providing the selection procedure, was

---

[1] "In parishes other than Orleans, *the court shall select one person from the grand jury venire to serve as foreman* of the grand jury. The sheriff shall draw indiscriminately and by lot from the envelope containing the remaining names on the grand jury venire a sufficient number of names to complete the grand jury. The envelope containing the remaining names shall be replaced into the grand jury box for use in filling vacancies as provided in Article 415." (Emphasis added)(the 2002 Supplement reflects such selection by nondiscriminatory lot).

2

unconstitutional; and that Peterson was denied effective assistance of counsel because his attorney did not file a motion to quash his indictment based on the allegedly discriminatory selection process. The Louisiana district court denied his application and the Louisiana Supreme Court denied his application for supervisory or remedial writs on December 17, 1999. *See State ex. rel. Peterson v. State*, 751 So.2d 876 (La. 1999).

Peterson, acting *pro se*, filed the present application for a federal writ of *habeas corpus* under 28 U.S.C. § 2254 on May 24, 2000, with the same arguments. It was referred to a magistrate judge for recommendations. She found that Peterson's claim fell within the ambit of the Antiterrorism and Effective Death Penalty Act (AEDPA) because he brought the petition after the AEDPA's effective date of April 24, 1996. The AEDPA-modified federal *habeas* law requires that a prisoner bring a collateral attack within one year of final judgment or within one year of the AEDPA's effective date. Peterson did not meet either of those criteria. Some exceptions are enumerated. Pertinent to Peterson, a prisoner may collaterally attack a judgment within one year of the date on which the claimed constitutional right was newly recognized by the United States Supreme Court and made retroactive to cases on collateral review. *See* 28 U.S.C. § 2244(d)(1)(C). The magistrate judge recognized that the Supreme Court may have announced a new constitutional right in *Campbell*, but recommended that Peterson's

petition be denied because the Supreme Court did not explicitly make *Campbell* retroactive for collateral attack purposes. The district judge adopted that recommendation and denied relief on August 2, 2000.

Peterson timely filed a notice of appeal on August 18, 2000. On August 28, 2000, the district court denied a COA. On October 25, 2000, this Court granted Peterson's motion for a COA on the issues herein.[2]

## II. Standard of Review.

A case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. *Teague v. Lane*, 489 U.S. 288, 301 (1989). Stated differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final. *Id.* (citing generally *Truesdale v. Aiken*, 480 U.S. 527, 528-29 (1987)(Powell, J., dissenting)).

If a new rule of constitutional criminal procedure has been announced, it is generally unavailable retroactively to collateral

---

[2] *See Peterson v. Cain*, No. 00-31047 (5th Cir. Oct. 25, 2000), ruling that a COA should issue because the district court denied *habeas* relief on procedural grounds, citing *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000), and because "jurists of reason would find it debatable" whether the district court was correct in its procedural ruling and whether Peterson's petition stated a valid claim of the denial of a constitutional right. *Cf. Fitzpatrick v. Cain*, No. 00-30500 (5th Cir. Oct. 30, 2000), denying COA to a similar argument because *Campbell* does not represent a "new rule" of equal protection but is merely an extension of *Powers v. Ohio*, 499 U.S. 400 (1991).

4

cases in which judgment has become final unless it falls within an exception to the general rule, *Teague*, 489 U.S. at 310, or the Supreme Court explicitly makes it retroactive.

The AEDPA effectively codified *Teague* such that federal *habeas* courts must deny relief that is contingent upon a rule of law not clearly established at the time the state conviction becomes final. *Williams v. Taylor*, 529 U.S. 362, 380-81 (2000). The AEDPA-modified federal *habeas* law does, however, provide a one-year period of limitation for a criminal defendant to apply for *habeas* relief under a new rule of law that has been made retroactive.

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of . . . the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]

28 U.S.C. § 2244(d)(1)(C). Peterson filed his federal *habeas* claim after the effective date of the AEDPA, which therefore governs.

## III. Analysis.

Peterson argues that *Campbell* expresses a "new rule" of constitutional criminal procedure: namely, that a white criminal defendant has the requisite standing to raise equal protection and due process objections to discrimination against black persons in the selection of grand jurors. *See Campbell*, 523 U.S. at 400. He asserts that this constitutes a "new rule" because the result was

5

not "dictated by precedent" when his conviction became final in 1982. No circuit has issued a definitive published opinion as to whether *Campbell* represents a new rule of criminal procedure.[3]

## A. Equal Protection.

*Campbell* enunciated that a white defendant has Fifth Amendment equal protection standing to assert the third-party rights of black venire members who were discriminated against in the selection of his grand jury. *Campbell*, 523 U.S. at 400. Peterson filed for collateral relief in 1998 based on this enunciation. *See* Appellant's Br. at 2.

The Supreme Court noted that "we can ascertain standing with relative ease by applying rules established in prior cases." *See Campbell*, 523 U.S. at 397 (citing *Allen v. Wright*, 468 U.S. 737 (1984)). The Court then derived its decision regarding the equal protection issue in *Campbell* from its earlier decisions in *Powers v. Ohio*, 499 U.S. 400 (1991), and *Rose v. Mitchell*, 443 U.S. 545 (1979).[4]

In *Powers*, the Court concluded that "a defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the prosecution['s use of peremptory challenges]

---

[3] The Sixth Circuit did address the subject in *Coe v. Bell*, 161 F.3d 320, 352-55 (6th Cir. 1998), but did not resolve whether *Campbell* stood for a "new rule" under either equal protection or due process prongs.

[4] Cited hereinafter in the short form as *Rose v. Mitchell*.

because of their race." *Powers*, 499 U.S. at 415. To reach that conclusion, the Court examined three factors: (1) the litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; (2) the litigant must have a close relation to the third party; and, (3) there must exist some hindrance to the third party's ability to protect his or her own interests. *Id.* at 411 (citations omitted). Integrity of the judicial system is at the core of the review.

As to the first factor, the Court held that the discriminatory use of peremptory challenges causes cognizable injury to a criminal defendant, who has a concrete interest in challenging the practice. *Id.* at 411. This is "because racial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process.'" *Id.* (quoting *Rose v. Mitchell*, 443 U.S. at 556 (finding that discrimination on the basis of race in the selection of members of a grand jury strikes at the fundamental values of the judicial system and society as a whole, and thus that a criminal defendant's right to equal protection is denied when he is indicted by a grand jury from which members of a racial group purposefully have been excluded)).

As to the second factor, the Court held that the excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom. *Powers*, 499

U.S. at 413. A venireperson excluded on the basis of race suffers personal humiliation before the public and may lose confidence in the court and its verdicts, as may the defendant if his or her objections cannot be heard. Thus, the Court ruled, "[t]his congruence of interests makes it *necessary* and *appropriate* for the defendant to raise the rights of the juror." *Id*. at 414 (emphasis added). Further, the defendant has much at stake in challenging the constitution of the jury on equal protection grounds – his or her conviction might be overturned. *See id.* (citing, *inter alia, Rose v. Mitchell*, 443 U.S. at 551).

As to the third factor, the Court held that the third-party, excluded juror was hindered by a considerable practical barrier in bringing suit because of the "small financial stake involved and the economic burdens of litigation." *Powers*, 499 U.S. at 415 (citing, *inter alia*, *Rose v. Mitchell*, 443 U.S. at 558).

There is no leap in logic nor a significant difference between *Powers* and *Rose v. Mitchell* to *Campbell*. Once again, the Court's concern is focused on the integrity of the judicial process in the selection of a grand jury foreperson. By "applying rules established in prior cases," *Campbell*, 523 U.S. at 397, the Court conducted precisely the same analysis founded in maintaining judicial integrity as in *Powers*.

Once again, the Court found that, regardless of skin color, a criminal defendant suffers a significant injury in fact when the

8

composition of the grand jury is tainted by racial discrimination. *Id.* at 398. Such discrimination "'strikes at the fundamental values of our judicial system' because the grand jury is a central component of the criminal justice system." *See id.* (quoting *Rose v. Mitchell*, 443 U.S. at 556). Even less distinguishing is the Court's review of the second and third factors. As to the second, the defendant and the excluded grand juror share a common interest in eradicating discrimination from grand jury selection; the defendant's conviction might be overturned as a result of his or her challenge. *Campbell*, 523 U.S. at 400 (citing *Rose v. Mitchell*, 443 U.S. at 551). As to the third, there is no reason why a white defendant would be any less effective as an advocate for excluded grand jurors than for excluded petit jurors. *Campbell*, 523 U.S. at 400 (citing *Powers*, 499 U.S. at 413-14). The Court's analysis is completely race-neutral regarding the defendant and the excluded jurors; what matters is discriminatory exclusion or selection on the basis of race.

Peterson argues that what is at stake is the potential for judicial misconduct in the discriminatory selection of a grand jury foreperson instead of potential prosecutorial misconduct in the discriminatory exclusion of petit jury jurors. Granted, that there may be an impression of a difference of magnitude between judicial and prosecutorial misconduct. Both, however, are firmly embedded in the integrity of the judicial system overall and are embraced by

the *Powers/Rose* analysis. Just as the Court in *Powers* held that it was *necessary* and *appropriate* for a defendant to raise the rights of a juror under equal protection analysis, *Powers*, 499 U.S. at 414, so was it in *Campbell*, without material differentiation. The analysis is color-blind and *Campbell*, while perhaps adding refinement, does not state a new Fifth Amendment equal protection rule of criminal procedure. Instead, the result in *Campbell* was dictated by the Court's precedents. Whether the rule was originally stated in *Powers* (1991), in *Rose v. Mitchell* (1979), or at some earlier point is immaterial. When Peterson filed his *habeas* petition in 1998, it was more than a year after either of the previous cases and his petition is therefore barred on equal protection grounds.

We now turn to due process analysis.

**B. Due Process.**

*Campbell* further enunciated that a white defendant has Fourteenth Amendment due process standing to litigate whether his conviction was obtained by means or procedures contravening due process when black venire members are discriminated against in the selection of his grand jury. *Campbell*, 523 U.S. at 400-01.

Such a Fourteenth Amendment due process right has also been previously addressed by the Court. *See Peters v. Kiff*, 407 U.S. 493 (1972)(plurality opinion). The opinion in *Peters* was expressed by Justice Marshall, joined by Justices Douglas and Stewart,

10

holding that constitutional due process and 18 U.S.C. § 243 applied so that "whatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law." *See id.* at 504. Three other justices concurred in the opinion, but "would implement the strong statutory policy of [18 U.S.C. §] 243, which reflects the central concern of the Fourteenth Amendment with racial discrimination, by permitting petitioner to challenge his conviction on the grounds that Negroes were arbitrarily excluded from the grand jury that indicted him." *See id*. at 507 (White, J., concurring). The concurring plurality thus would have put the exclusion into a class by itself under § 243 rather than under the Fourteenth Amendment.

The Court was faced with another grand jury selection question in *Hobby v. United States*, 468 U.S. 339 (1984). There, the Court held that discrimination in the selection of a grand jury foreperson, from within the ranks of a properly constituted grand jury and as distinguished from discrimination in the selection of the grand jury itself, did not violate due process. *Id*. at 344. Because the duties of a foreperson were "ministerial," discrimination in his or her selection would have little if any effect on a defendant's due process right to fundamental fairness. *Id.* Such a concern does not arise when no large and identifiable

11

segment of the community has been excluded from jury service and the alleged discrimination "pertains only to the selection of a foreman from among the members of a properly constituted federal grand jury." *Id*. (citing *Peters*, 407 U.S. at 503).

When it decided *Campbell* in 1998, the Court tread lightly on its decision in *Peters*, noting that "a majority of Justices could not agree on a comprehensive statement of the rule or an appropriate remedy for any violation." *Campbell*, 523 U.S. at 401. Nonetheless, it expressly recognized that its later analysis in *Hobby* had "proceeded on the implied assumption that a white defendant had standing to raise a due process objection to discriminatory appointment of a federal grand jury foreperson and skipped ahead to the question whether a remedy was available." *See id*. Therefore, "[t]he relevant assumption of *Hobby*, and [the Court's] holding [in *Campbell*], is that a defendant has standing to litigate whether his conviction was procured by means or procedures which contravene due process." *See id.*

The *Hobby* foreperson had been selected under North Carolina law from an already-impaneled grand jury and his or her further duties were merely "ministerial." In *Campbell*, however, Louisiana law specified that the foreperson be selected by the judge of the case from the grand jury venire *before* the remaining grand jurors were selected by lot and impaneled. Therefore, the foreperson was selected not merely to conduct ministerial duties, but was also

12

selected to act as a voting member of the grand jury, a vote that directly impacted the defendant. To the extent that such a selection was made discriminatorily, it ran afoul of the *Hobby* implied assumption of due process. The Court's decision in *Campbell* was therefore dictated by its opinion in *Hobby*.

*Campbell* therefore does not represent a "new rule" of criminal procedure under the due process requirements of the Fourteenth Amendment. Because Peterson did not make his due process argument at the time of his trial or within one year following *Hobby* (1984), his claim must be disallowed under the AEDPA.

## C. Sixth Amendment Fair Cross-Section Claim.

Peterson briefly avers that *Campbell* extends to the Sixth Amendment right to a fair cross-section in jury composition, but does not seriously argue it. Further, he has not raised this issue in state court. The Supreme Court expressly declined to consider this Sixth Amendment issue in *Campbell* because it had not been presented to the state court previously. *Campbell*, 523 U.S. at 403. We will similarly disregard it.

## IV. Conclusion.

Because *Campbell* does not express a new rule of constitutional criminal procedure, we need not carry out a retroactivity analysis. Based on the analysis herein, we hereby AFFIRM the district court.