924 So.2d 122 (2006)
STATE of Louisiana
v.
James Carl CRANDELL.
No. 2005-KK-1060.
Supreme Court of Louisiana.
March 10, 2006.
*123 Bossier Parish Public Defender's Office, Pamela G. Smart, for applicant.
Charles C. Foti, Jr., Attorney General, John (Schuyler) Marvin, District Attorney, John M. Lawrence, Assistant District Attorney, for respondent.
Christine Marie Lehmann, David William Price, for amicus curiae, Louisiana Association of Criminal Defense Lawyers.
KIMBALL, Justice.
After reviewing the record in this case, we conclude defendant's application for certiorari was untimely filed, and we therefore recall the writ as improvidently granted. Because defendant's writ application was not timely filed, we will not consider defendant's application.
The facts underlying the instant application are as follows. In 1991, a Bossier Parish jury found defendant guilty of first degree murder. At the conclusion of the sentencing phase of trial, the jury was unable to reach a unanimous verdict, and defendant was therefore sentenced to life imprisonment without benefit of probation, parole or suspension of sentence in accordance with La. C.Cr.P. art. 905.8.[1] The *124 court of appeal affirmed defendant's conviction and sentence. State v. Crandell, 604 So.2d 123 (La.App. 2 Cir.1992). On August 6, 2004, defendant was granted federal habeas corpus relief.
On September 7, 2004, a Bossier Parish Grand Jury re-indicted defendant for first degree murder, and the State filed a notice of intent to seek the death penalty. In response, defendant filed a motion to quash the State's notice of intent to seek the death penalty. After a contradictory hearing, the district court denied defendant's motion on January 3, 2005. Defendant timely applied in the court of appeal for a supervisory writ, and the court of appeal denied defendant's writ on February 23, 2005. Defendant then applied for a rehearing of the court of appeal's writ denial. On March 23, 2005, the court of appeal denied the rehearing, stating, "It is the policy of this court not to grant rehearing in cases in which the court has denied a writ application on the merits, pursuant to URCA, Rule 2-18.7, which does not allow for rehearing in such situations."
Defendant then sought a writ of certiorari from this court. Defendant's application was postmarked April 22, 2005, and received April 25, 2005. Supreme Court Rule X, § 5(a) provides:
(a) An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs (but not when the court has merely granted an application for purposes of further consideration), or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal; however, if a timely application for rehearing has been filed in the court of appeal in those instances where a rehearing is allowed, the application shall be made within thirty days of the mailing of the notice of denial of rehearing or the judgment on rehearing. No extension of time therefor will be granted.
(Emphasis added.) A plain reading of this Rule indicates that an application for review following a court of appeal's denial of an application shall be filed within thirty days of the mailing of the notice of the action. If a rehearing is allowed to be taken from the action of the court of appeal and a rehearing application was timely filed in the court of appeal, then an application shall be filed within thirty days of the mailing of the notice of the action on rehearing.
In the instant case, the court of appeal denied defendant's writ application and mailed the notice of judgment on February 23, 2005. Uniform Rule of the Courts of Appeal ("URCA"), Rule 4-9, provides that Rules 2-18.1 through 2-18.7 apply to applications for rehearings related to writ applications. Rule 2-18.7 provides that "[a]n application for rehearing will be considered where the court has: (A) Granted a writ application on the merits; (B) Dismissed an appeal; or (C) Ruled on the merits of an appeal." The Rules do not provide for a rehearing from a denial of an application for supervisory writs. See Y.F.B. v. R.D.R., 01-0345 (La.4/12/01), 787 So.2d 276; Morris v. Stueben, 01-0137 (La.1/26/01), 781 So.2d 1220. Consequently, the thirty-day period for taking writs to this court provided by Supreme Court Rule X, § 5(a) was not extended by defendant's application for rehearing in the court of appeal because it was not an instance where a rehearing was allowed.[2]
*125 Defendant's writ application in this court was filed on April 25, 2005, more than thirty days after the court of appeal's denial of his application. Although defendant's application in this court was filed within thirty days of the court of appeal's denial of rehearing, the application was untimely filed because a rehearing of the court of appeal's writ denial was not allowed. Accordingly, the delay for seeking review by this court began to run from the mailing of the notice of the court of appeal's writ denial, not from its denial of rehearing. See id.
For the above reasons, we find defendant's writ application was untimely filed and recall the writ as improvidently granted. The case is remanded to the district court for further proceedings.
WRIT RECALLED. CASE REMANDED TO DISTRICT COURT FOR FURTHER PROCEEDINGS.
CALOGERO, J., C.J., dissents and assigns reasons.
KIMBALL, J., additionally concurs for reasons assigned by VICTORY, J.
JOHNSON, J., dissents and assigns reasons.
VICTORY, J., additionally concurs with reasons.
KNOLL, J., concurs for reasons assigned by VICTORY, J.
TRAYLOR, J., additionally concurs for reasons assigned by VICTORY, J.
WEIMER, J., dissents & assigns reasons.
CALOGERO, Chief Justice, dissents and assigns reasons.
Today's action by the majority is an unusual disposition from which I must respectfully dissent. First, with full awareness and knowledge that the defendant's writ application was not timely filed, the court granted the writ application to decide a serious legal issue regarding whether or not this defendant, whose first trial resulted in a sentence of life imprisonment, can be exposed to the death penalty upon retrial after successfully obtaining habeas corpus relief in a federal court.[1] The case was then briefed, orally argued, and submitted to this court for decision. Now, the majority has determined that the writ should be recalled as improvidently granted because the writ application was not timely filed. Consequently, the court's action in the instant case appears to be unique in that the writ, having issued with our knowledge that the application was not timely filed, is, on timeliness grounds, now being recalled as improvidently granted following briefing, oral argument, and submission of the case for decision.
Second, what is even more unusual in this case is that four of seven justices on the court have nonetheless recited in a concurring opinion their view that they believe the legal issue should be resolved in favor of allowing the State to try the defendant anew with exposure to the death penalty.[2] In my view, the court should *126 have directly reached the merits of the legal issue presented by the defendant, without having to resort to a belated writ denial with four concurring justices agreeing on what the merits disposition would be were the court to have rendered an authored, dispositive opinion.
Having granted this writ application with the full knowledge and awareness that the application was not timely filed under our rules, this court legitimately and reasonably exercised its supervisory authority in order to consider an important legal issue presented by the defendant's writ application. Prior constitutional law required that an application invoking this court's supervisory authority to review a decision in the court of appeal had to be filed within thirty days of finality of that court of appeal judgment. This limitation had been jurisdictional in nature because the time limit derived from the 1921 and 1898 Louisiana Constitutions. See, e.g., 1921 La. Const. art. 7, § 11; 1913 La. Const. art. 101; 1898 La. Const. art. 101; see also Trimble v. Employers Mut. Casualty Co., 213 La. 644, 35 So.2d 416, 417 (1948)(30-day limit provided in 1921 La. Const. art. 7, § 11 "is positive and explicit; it enjoins this court from entertaining applications for writs of certiorari to the Courts of Appeal unless they are filed within the time prescribed."). However, Louisiana's present constitution provides this court with plenary supervisory authority "over all other courts" without setting forth any time limits on applications seeking to invoke that authority, and gives this court the power to "establish and enforce rules necessary to secure the regular and expeditious disposition of its business. . . ." 1974 La. Const. art. 5, § 5(A). The Louisiana legislature has further provided the court, "for the better administration of justice," the power to "establish and enforce rules necessary to secure the regular and expeditious disposition of its business. . . ." La.Rev.Stat. 13:72. The timeliness provisions of present La. Sup.Ct. Rule X are therefore no longer jurisdictional in nature but are promulgated by this court for the orderly and prompt transaction of its business, pursuant to a broad constitutional and statutory delegation of authority.
In the present case, although the defendant's writ application was not timely filed, as the majority opinion now explains, the State has made no objection on timeliness grounds. Instead, the State has elected to address the merits of the issue raised in the writ application and asserted in the defendant's brief, presumably because, as the State acknowledged during oral argument, the legal issue presented is an important question that deserves resolution by the court. The concurrence and the members of the court joining it also apparently recognize the importance of resolving the legal issue presented. Yet, had the court not recalled the writ, our answer to this question in an authored majority opinion would not, like the concurrence, have been merely advisory, much less obiter dicta, because judicial efficiency alone militated in favor of resolving this issue before trial rather than on appeal following a lengthy capital trial. Further, it is quite evident that the delay in filing the writ application has had no impact upon the court's orderly transaction of its business. Moreover, given the State's responses at oral argument, the minimal delay cannot be said to have resulted in any change of position by the respective parties below while the application remained pending in this court. Accordingly, I believe that the issue of timeliness was resolved when this court exercised its supervisory authority *127 and granted the defendant's writ application.[3]
Having legitimately granted the writ application under our supervisory authority, this court should answer the question raised therein by an authored majority opinion. I would resolve that issue by following settled jurisprudence from this court applying the protections of our state constitution. See State v. Washington, 380 So.2d 64 (La.1980); see also State v. Goodley, 423 So.2d 648 (La.1982). In Washington, this court held that our state constitutional right to judicial review set forth in La. Const. art. I, § 19, prohibits the State from seeking the death penalty on retrial of a capital case in which the defendant has been successful in having his life sentence reversed.[4] We recognized in Washington that to allow the defendant to be faced again with the death penalty after successfully attacking his first conviction "would `impair [] to an appreciable extent,' Crampton v. Ohio, reported sub nom., McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971), the policies underlying the constitutional right to appeal in Louisiana." 380 So.2d at 67. The Washington court, noting the uniqueness and irrevocability of the death penalty, explained as follows the appreciable chilling effect on the exercise of the state constitutional right to judicial review:
"Weighing the chances for some future increase in the number of years on his sentence, a defendant may well pursue his appeal undeterred. On the other hand, confronted with only two possible sentencing alternatives and a chance of winding up much worse off than before (death for life), the accused may forego his appeal of a life sentence in a capital case and accept what he otherwise feels is an unjust verdict and punishment."
Washington, 380 So.2d at 66.
Today, the concurrence, without citing any jurisprudence, law, or legislative history from the 1973 constitutional convention, specifically limits our state constitutional right to "judicial review" as granting a right only to direct review by a Louisiana appellate court under the facile rationale that there can be no state constitutional right to seek federal habeas relief. However, given the "uniqueness and irrevocability" of the death penalty, I see no reason to treat the defendant's success in a collateral proceeding in the federal courts any differently than if he had obtained a new trial on direct appeal to a court in this state. The appreciable chilling effect on the exercise of the defendant's right to judicial review in capital cases, as identified in Washington, remains the same regardless of whether the review to be sought is in the state appellate court on direct appeal, a superior court on discretionary review, or a federal court on petition for habeas corpus relief. Accordingly, I would reverse the ruling of the district court, which denied the defendant's motion to quash the State's notice of intent to seek the death penalty.
JOHNSON, J., dissents and assigns reasons.
I respectfully disagree with the majority's decision to deny this writ application due to untimeliness. Not to consider this *128 writ application will result in this case being tried as a death penalty case. If Crandell is sentenced to death and then appeals to this Court, reversal might be required pursuant to State v. Washington, 380 So.2d 64(La.1980), which prohibited the state from seeking the death penalty on retrial of a capital offense where the defendant had receive a life sentence and successfully challenged the conviction. The instant case is analogous to the facts in Washington, supra., in that Crandell sought relief in the federal courts, which overturned his conviction and sentence of life imprisonment.

PROCEDURAL HISTORY
In 1991, a Bossier Parish jury found the defendant guilty of first degree murder. At the conclusion of the penalty phase, the jury was unable to reach a unanimous verdict and in accordance with Louisiana law, see LSA-C.Cr.P. Art 905.8, the court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
On August 6, 2004, the federal district court granted defendant habeas relief, reversing his conviction and remanding his case to the trial court. On September 7, 2004, a grand jury re-indicted defendant for first degree murder, and the State filed a notice of intent to seek the death penalty. Defendant filed a motion to quash the State's notice of intent to seek the death penalty, which the district court denied with written reasons. The court of appeal denied relief, State v. Crandell, 39,905 (La. App.2d Cir.2/23/05), and this Court granted defendant's ensuing application for writs. State v. Crandell, 05-1060, (La.6/17/05).

DISCUSSION
As discussed above, defendant filed his motion to quash the State's notice of intent to seek the death penalty based on the court's imposition of a life sentence following the jury's inability to agree unanimously on a verdict at the conclusion of the penalty phase of his first trial.[1] After a hearing on the issue, the trial court denied the defense motion, finding that federal constitutional law endorsed the practice, Sattazahn v. Pennsylvania, infra, and distinguishing this Court's seminal case on the issue. State v. Washington, infra. The court of appeal agreed, denying writs with written reasons.

Double Jeopardy.
A review of federal jurisprudence indeed demonstrates that double jeopardy principles present no obstacle to the State seeking the death penalty in a case in which the defendant, in a previous trial, was not "acquitted" by the jury at the penalty phase.
The Fifth Amendment's Double Jeopardy Clause provides that "no person shall. . . be subject for the same offence to be twice put in jeopardy of life or limb." However, as its principal protection, the Double Jeopardy Clause prohibits the State from prosecuting a defendant twice for the same crime only in cases in which the defendant has been acquitted in the first trial. Green v. United States, 355 *129 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957) (citing 4 Blackstone's Commentaries 335 (1769) ("If the jury therefore find the prisoner not guilty, he is then for ever quit and discharged of the accusation. . ."). Green, supra., held that when a defendant is convicted of a lesser included offense and that conviction is overturned on appeal, the conviction operates as an implied acquittal of the charged crime, prohibiting the State from retrying the defendant on the original charge. Id., 355 U.S. at 193, 78 S.Ct. at 226-27 (double jeopardy prohibits a defendant from having to "barter his constitutional protection against a second prosecution" for the charged crime "as the price of a successful appeal from an erroneous conviction" on the lesser offense).
According to Blackstone's Commentaries, the concept of double jeopardy had its roots in ancient common law pleas before finding expression in the legal tradition of colonial America. Inherent in the guarantee against double jeopardy are three constitutional protections: 1) against a second prosecution for the same offense after acquittal; 2) against a second prosecution for the same offense after conviction; 3) against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969). In North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court concluded that there would be a violation of the Fourteenth Amendment should a trial court impose a heavier sentence on a re-convicted defendant in order to punish him for having successfully appealed his original conviction.
In Bullington v. Missouri, 451 U.S. 430, 438, 101 S.Ct. 1852, 1858, 68 L.Ed.2d 270 (1981), the United States Supreme Court held that double jeopardy protections may extend to a capital sentencing proceeding given its resemblance to a trial on the issue of guilt. In Bullington, because the original jury sentenced the defendant to life in prison, the Court reasoned that the jury effectively "`acquitted' defendant of whatever was necessary to impose the death sentence." Id., 451 U.S. at 445, 101 S.Ct. at 1861. The Court reasoned that because the sentencing proceeding resembled a trial on guilt or innocence, "the protection afforded by the Double Jeopardy Clause to one acquitted by a jury also is available to him with respect to the death penalty, at his retrial." Id., 451 U.S. at 446, 101 S.Ct. at 1861.
Nonetheless, Bullington and its progeny make clear that a defendant must have secured an "acquittal" of the death penalty to contest successfully the subsequent imposition of the death penalty on double jeopardy grounds. Bullington, 101 S.Ct. at 1862; Arizona v. Rumsey, 467 U.S. 203, 211-212, 104 S.Ct. 2305, 2310, 81 L.Ed.2d 164 (1984); Poland v. Arizona, 476 U.S. 147, 154, 106 S.Ct. 1749, 1754, 90 L.Ed.2d 123 (1986). ("Under Bullington and Rumsey, therefore, the relevant inquiry in the cases before us is whether the sentencing judge or the reviewing court has `decid[ed] that the prosecution has not proved its case' for the death penalty and hence has `acquitted' petitioners.") Poland, 106 S.Ct. at 1754 (citing Bullington, 451 U.S. at 443, 101 S.Ct. at 1860).
Most recently, the Supreme Court considered the application of double jeopardy in a case procedurally similar to the instant one. In Sattazahn v. Pennsylvania, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003), a jury convicted the defendant of first degree murder but deadlocked at the penalty phase.[2] Pursuant to the defendant's *130 motion, the trial court discharged the jury and entered the default life sentence prescribed by Pennsylvania law. Id., 537 U.S. at 104-05, 123 S.Ct. at 736. The Pennsylvania Supreme Court later reversed the defendant's conviction, finding that the trial judge had read an erroneous jury instruction. At retrial, a second jury convicted the defendant of first degree murder and this time sentenced him to death. The Pennsylvania Supreme Court affirmed, rejecting the defendant's claims that the Double Jeopardy Clause and the Due Process Clause barred his retrial for capital murder. The United States Supreme Court granted certiorari to consider the defendant's double jeopardy and due process challenges to the imposition of the death sentence.
The Sattazhan majority held that the critical inquiry regarding the attachment of jeopardy in capital sentencing proceedings is whether there has been an acquittal in the trial court. 537 U.S. at 109, 123 S.Ct. at 738. Neither the jury's deadlock at sentencing nor the court's entry of a life sentence as proscribed by law constituted an acquittal because the former did not represent a finding "sufficient to establish legal entitlement to the life sentence" and the latter did not resolve any factual matter which might also have established a legal entitlement to a life sentence. 537 U.S. at 110, 123 S.Ct. at 738. Accordingly, the majority continued that double jeopardy did not prevent the prosecution from seeking death at a subsequent trial. Id. 537 U.S. at 114, 123 S.Ct. at 741 ("This case hardly presents the specter of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact. . . . Instead, we see here a State which, for any number of perfectly understandable reasons . . . has quite reasonably agreed to accept the default penalty of life imprisonment when the conviction is affirmed and the case is, except for that issue, at an endbut to pursue its not-yet-vindicated interest in one complete opportunity to convict those who have violated its laws where the case must be retried anyway.").[3]
*131 In an opinion authored by Justice Ginsburg, four justices dissented from the majority in Sattazahn, agreeing with the defendant's contention that the court-imposed life sentence mandated by state law following the hung jury provided double jeopardy protection. While acknowledging that the life sentence dictated by the statute did not constitute an acquittal of death, the dissent reasoned that it should nonetheless preclude the state from seeking capital punishment in a subsequent case because the sentence constituted a trial-terminating judgment not prompted by a procedural move by the defendant. 537 U.S. at 124, 123 S.Ct. at 746. The dissent continued that the majority's holding placed a defendant serving a life sentence after a jury deadlock at the penalty phase in a perilous predicament dictating that she "relinquish either her right to file a potentially meritorious appeal, or her state-granted entitlement to avoid the death penalty." Id. 537 U.S. at 126, 123 S.Ct. at 748.
Ultimately, however, the holdings of Bullington and Sattazahn demonstrate that double jeopardy principles do not preclude the state from seeking death in a subsequent first degree murder prosecution as long as the defendant's initial sentence was imposed by the judge after the jury could not unanimously return a verdict.

Due Process.
The Sattazahn majority also summarily dismissed the defendant's due process challenge to his death sentence. Labeling the defendant's argument as "nothing more than his double jeopardy claim in different clothing," the Court found that nothing in the Pennsylvania sentencing scheme gave him an immutable interest in life or liberty. 537 U.S. at 115-16, 123 S.Ct. at 742. In any event, the scheme only deprived the defendant of that interest after he, himself had invoked "process" by successfully challenging the conviction on appeal. Id.

Louisiana Constitutional Right to Appeal.
Notwithstanding the federal precedent endorsing the state's constitutional right to seek the death penalty in cases in which the defendant's earlier capital case, subsequently reversed on appeal, resulted in a life sentence when the jury was deadlocked at the penalty phase, in State v. Washington, 380 So.2d 64 (La.1980)(Per Curiam), this Court prohibited the practice as in violation of the right to appeal.
As an initial matter, Washington anticipated the United State's Supreme Court's holdings in Bullington and Sattazahn. ("We are satisfied that at the federal level, neither the protection against double jeopardy nor the due process clause absolutely bars the state from seeking the death penalty on retrial after appeal of a capital case in which the defendant has received a life sentence.") Id. 380 So.2d at 66. Nonetheless, the Court continued that when a defendant is faced with the possibility that a subsequent jury would sentence him to die, an "accused may forego his appeal of a life sentence ... and accept what he otherwise feels is an unjust verdict and punishment." Id. Finding the practice inconsistent with "policies underlying the constitutional right to appeal in Louisiana," the Court held "that the state may not subject a defendant to a second prospect of death on retrial of a capital case in which he has received a sentence of life imprisonment." Id. 380 So.2d at 67.

*132 Analysis

The lower courts distinguished Washington from the instant case based on its procedural posture. The trial court explained:
Once James Crandall's appeal rights have [sic] been exhausted in the state courts, said defendant turned to the federal courts to seek an alternative avenue of relief. The federal court, in granting the habeas relief requested by the defendant, served to [in]validate the entire proceeding by finding that the grand jury's indictment was defective. The federal court's ruling served to nullify the entire proceeding beginning with the indictment of the defendant ... and the trial and sentencing which flowed [from] said indictment. No court has found that any error occurred during the trial or sentencing phase of the proceeding against the defendant ..., which defendant[] would have forced the basis of attack on appeal. If this defendant had been successful on appeal regarding an error in the trial proceeding, then this Court would be compelled to follow ... Washington. The concept of nullity has long been distinguished from mere error in a criminal proceeding. By finding a defect in the indictment itself from which the original trial arose, the federal court has served to find this entire matter null. As such, it is as if no trial had been had and no verdict had ever been reached. It appears that the appropriate inquiries should be as to whether or not a retrial of this first degree murder charge with the State intending to seek the death penalty serves to violate the defendant's constitutional rights of due process and against double jeopardy.
Similarly, the Second Circuit stated that this "Court's disposition [in Washington] was based solely on the right to appeal and did not consider the circumstance when a direct appeal specifically requests and obtains a ruling that the conviction and sentence were void ab initio due to structural error in the indictment process." State v. Crandell, 39,905, p. 1 (La.App.2d Cir.2/23/05).
However, the distinction cited by the lower courts does not appear particularly persuasive. As an initial matter, a defendant convicted of first degree murder without capital punishment is not likely to parse his various appellate claims to determine which, if successful, could ultimately result in a subsequent jury sentencing him to death. In addition, while the trial court correctly found that the nature of the habeas relief returned the posture of the case to one in which "no trial had been had and no verdict had ever been reached," in reality, defendant has been imprisoned as a result of the earlier conviction and life sentence for over 25 years. Moreover, while the district court continued that the concept of nullity "has long been distinguished from mere error in a criminal proceeding," the relief granted in this case was not discovered by a mere cursory inspection of the pleadings but as evidenced by the federal Fifth Circuit's opinion remanding the case, only after several years of protracted litigation concerning what relief was due a defendant who could demonstrate racial discrimination in the grand jury selection process.[4]Cf. State v. Smith, 367 So.2d *133 857, 858 (La.1979) ("an error in the size of the jury is discoverable on the face of the record and [may be noted] ex proprio motu without formal objection or an assignment of error."). In fact, neither the district court nor the court of appeal cited any authority for the proposition that an indictment returned from a grand jury tainted by racial discrimination renders all subsequent proceedings void ab initio. While an indictment tainted by racial discrimination constitutes a structural defect in the proceedings exempt from harmless-error analysis, Vasquez v. Hillery, 474 U.S. 254, 263-64, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986), this Court has long held that a defendant must raise the error in a timely manner, i.e., by way of a pre-trial motion to quash, or he waives it. See Deloch v. Whitley, 96-1901, p. 1 (La.11/22/96), 684 So.2d 349 ("Counsel must assert" his complaint about grand jury selection "in a pre-trial motion to *134 quash or waive any complaint in that regard."); see also Francis v. Henderson, 425 U.S. 536, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976) (federal equal protection claims arising out of the selection and composition of grand juries in Louisiana remain subject to this state's settled procedural rule that defendant must assert his challenge in a motion to quash filed before trial). Thus, as a matter of this Court's settled jurisprudence, racial discrimination in the selection of the grand jury which indicted a defendant does not constitute a non-waiverable jurisdictional defect rendering all subsequent proceedings in a case null. Accordingly, even assuming that it were valid in other contexts, the distinction drawn by both the district court and the court of appeal between trial error and super-structural "jurisdictional" error has no application to the present case.
However, Washington may not determine the outcome of this case for another reason. As discussed above, at the core of the decision in Washington is a defendant's constitutional right of appeal in Louisiana and this Court's reluctance to burden the free exercise of that right in the sui generis context of capital litigation. At risk in the present case is the "chilling" only of a defendant's federal statutory right to pursue federal habeas corpus relief from a state court conviction once he has exhausted his avenues of direct review. By contrast, the defendant in Sattazahn remained on direct review when he filed for certiorari from the decision rendered by the Pennsylvania Supreme Court that neither the Double Jeopardy Clause nor the Due Process Clause barred the state from seeking the death penalty at retrial of the case. Arguably, the indifference of the majority in Sattazahn to any possible "chilling" of a defendant's right to an appeal from his capital conviction (a principal concern of the dissenters) would also extend to a defendant's pursuit of federal habeas corpus relief from his state court conviction as a matter of 28 U.S.C. 2254. If the federal courts are not concerned about the "chilling" of federal collateral review of state court capital convictions, this Court might share the same indifference and limit the reach of Washington to the sheltering embrace of the constitutional right to direct appeal in Louisiana. The limit would exclude state court post-conviction proceedings pursuant to La.C.Cr.P. arts. 924-930.8 as well because they, too, are a creature of statutory and not constitutional origin. However, this result appears somewhat at odds with the underlying premise of Washington that in Louisiana a defendant should have the freedom to pursue relief from error in a capital case unburdened by the concern that the price of success may be renewed capital proceedings before a second jury.
At any rate, carving out this limited exception to the rule set out in Washington would arguably offend, in spirit at least, ex post facto principles as the new jurisprudential rule would operate to subject defendant to the death penalty after he (presumably) relied on the earlier case to challenge his conviction without the realization that the state could seek to execute him if the federal court granted him relief. Notably, in Washington, this Court rejected the lower court's conclusion that the defendant's motion to determine the effect of an appeal was premature. Id. 380 So.2d 65. The Court concluded that the motion raised more than an advisory opinion because "[w]hether or not [the defendant] will face a second prospect of death as a measure of success on appeal may well, as a practical matter, enter into his decision to pursue the appeal in the first place." Id. at 65 (citation omitted).
In a somewhat comparable situation, in State v. Wessinger, 98-1234, p. 20 *135 (La.5/28/99), 736 So.2d 162, 181, this Court terminated the exemption of sentencing hearings in capital cases from the contemporaneous objection requirement of La. C.Cr.P. art. 841. However, because the "holding affect[ed] the most serious sanction our society can impose," the Court applied the rule only to trials that commenced after the decision was rendered. Employing the same rationale, should the Court elect to endorse the exception carved out by the lower courts to the rule set out in Washington or to overrule Washington in its entirety, it should likely follow the approach set out in Wessinger and apply the rule only to prospective cases.
Although federal constitutional law endorses the practice, there appears no logical basis for excepting defendant's case from this Court's holding based on the constitutional right to appeal in Louisiana "that the state may not subject a defendant to a second prospect of death on retrial of a capital case in which he has received a sentence of life imprisonment." State v. Washington, supra.
The lower courts' "distinguished" this Court's opinion in Washington, supra., with little discussion of Crandell's State constitutional right to appeal; thus their decision offends Louisiana Const. Art. I subsection 19, which guarantees Louisiana citizens a right to judicial review. Chief Justice Calogero's dissent in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, reiterates that what appears to be retaliatory in nature may have a chilling effect on the exercise of a defendant's right to appeal. The State's pursuit of the death penalty in a retrial of a defendant who received the benefit of a hung jury in his first trial, for a defect that occurred in the indictment process, appears retaliatory; the lower court's decisions give the State a proverbial second bite at the apple only because the defendant exercise his federal habeas corpus rights.
Accordingly, consistent with our ruling in State v. Washington, supra., I would hold that the state may not subject a defendant to a second prospect of death on retrial of a capital case in which he has received a sentence of life imprisonment. Thus, the Court should reverse the rulings of the lower courts denying defendant's motion to quash the state's notice of intent to seek the death penalty and remand this case to the district court for further proceeding.
VICTORY, J., additionally concurring.
While I agree that this writ application was improvidently granted and should not be considered, I write separately to express my view that even had it been granted, the result would be the same. Neither double jeopardy nor the right to appeal precludes the state from seeking the death penalty against this defendant in this first degree murder trial.
At defendant's first trial, the jury was unable to reach a unanimous verdict at the conclusion of the penalty phase and in accordance with La.C.Cr.P. art. 905.8, the court sentenced defendant to life imprisonment. The court of appeal affirmed the conviction and sentence. State v. Crandell, 604 So.2d 123 (La.App. 2 Cir.1992). Double jeopardy principles do not preclude the state from seeking death in a subsequent first degree murder prosecution as long as the defendant's initial sentence was imposed by the judge after the jury could not unanimously return a verdict. Sattazahn v. Pennsylvania, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003); Bullington v. Missouri, 451 U.S. 430, 438, 101 S.Ct. 1852, 1858, 68 L.Ed.2d 270 (1981). In addition, La.C.Cr.P. art. 598, which provides that "[w]hen a jury returns a verdict in the sentencing hearing in a capital case *136 determining that the defendant should be sentenced to life imprisonment, the defendant cannot thereafter be sentenced to death for that offense on a new trial," only prevents the jury from sentencing a defendant to death, following retrial, if the first jury recommended that the sentence should be life imprisonment by unanimous concurrence. La.C.Cr.P. art. 598, Official Revision Comment (c). Here, because the jury did not unanimously concur in sentencing the defendant to life imprisonment, neither double jeopardy, nor La.C.Cr.P. art. 598 preclude the state from seeking the death penalty.
Further, this Court's holding in State v. Washington, 380 So.2d 64 (La.1980) does not preclude the state from seeking the death penalty. State v. Washington held that pursuant to the constitutional right to appeal in Louisiana, the state may not subject a defendant to a second prospect of death on retrial of a capital case in which he has received a sentence of life imprisonment. The right to appeal is found in La. Const. Art. 1, § 19, which provides:
No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived. The cost of transcribing the record shall be paid as provided by law.
In Washington, as here, the trial court sentenced the defendant to life imprisonment after the jury could not agree on the penalty. After the court advised the defendant of his right to appeal, the defendant filed a motion to determine the effect of that appeal and whether the state could seek the death penalty at a second trial if he was successful on appeal. This Court granted the defendant's writ application and, as stated above, held that the state would be precluded from seeking the death penalty at a second trial based on the constitutional right to appeal.
However, unlike Washington, the defendant in this case is not pursuing his right to appeal under the Louisiana Constitution, but instead was granted habeas relief by a federal district, after the state appellate court had affirmed his conviction and sentence. La. Const. Art. 1, § 19 only grants a criminal defendant the right to judicial review in state court. Moreover, Louisiana was the first state to make criminal appellate jurisdiction explicit and the first to ensure that such jurisdiction conferred a constitutional right to appeal convictions. See Goulka, Jeremiah E., The First Constitutional Right to Criminal Appeal: Louisiana's Constitution of 1945 and the Clash of Common Law and Natural Law Traditions, 17 Tul. Euro. Civ. LF 151, 153 (2002). However, this right does not and cannot confer the alternative right to seek habeas relief in a federal court. That is a right conferred by federal statutory law. 28 U.S.C. § 2254.
Thus, the defendant is being lawfully subjected to the death penalty in this first degree murder trial as he was not successful in having his conviction or life sentence overturned on appeal in a state court. His state court appeal resulted in his conviction and life sentence being affirmed. The right to appeal found in La. Const. Art. 1, § 19 guarantees only a right to judicial review by a state appellate court.
For the following reasons, I respectfully concur.
WEIMER, J., dissenting.
I respectfully dissent.
I would not resolve this matter on the basis of the timeliness of the writ application. I do not lightly suggest we deviate from the rules of this court regarding timely filing. However, after having granted the writ, the unique facts and *137 circumstances of this case dictate that we should resolve this matter on the merits.
Both parties need to know whether this matter can proceed as a capital case. If the state proceeds with this capital prosecution, substantial costs will be incurred by the state and defense[1] which may be incurred in vain. Judicial economy mitigates in favor of merits resolution. The issue will not go away if the defendant is sentenced to death, but is merely postponed to be resolved after substantial time, effort, and emotion has been expended in a capital prosecution. While not determinative, the state has not complained about the timeliness issue, potentially underscoring its need to have this matter resolved pretrial. As noted by the majority,[2] the writ denial by the court of appeal in this matter was not a simple denial, but was accompanied by an analysis of the defendant's application which covers two pages of reasons. While not excusing noncompliance with the timeliness rule, such extensive treatment could lull one into a belief that a rehearing request was appropriate.
Lastly, and most significantly, this is a capital case. As stated in Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976), "the death penalty is `unique in its severity and irrevocability.'"
Whether or not this matter is distinguishable from State v. Goodley, 423 So.2d 648 (La.1982), and State v. Washington, 380 So.2d 64 (La.1980), is ultimately the responsibility of this court to determine. We should discharge that responsibility at this time.
NOTES
[1] La.C.Cr.P. art. 905.8, which deals with sentencing in capital cases, provides in pertinent part, "If the jury is unable to unanimously agree on a determination, the court shall impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence."
[2] We note the court of appeal's writ denial was accompanied by an analysis of the merits of defendant's application; however, the ultimate resolution of the case remains the denial of defendant's writ application. See Y.F.B. v. R.D.R., 01-0345, p. 1 n. 1 (La.4/12/01), 787 So.2d 276, 276 n. 1.
[1] Briefly put, the question raised is whether the State may seek the death penalty on retrial after the defendant, who had received a life sentence following a first degree murder conviction, was granted federal habeas corpus relief. The district court denied the defendant's motion to quash the State's notice of intent to seek the death penalty, and the court of appeal denied the defendant's writ application.
[2] The majority's action recalling the writ will likely also have the result of depriving the defendant of the ability to seek rehearing under our rules. See McGrail v. Lee, 02-1496 (La.7/3/03), 852 So.2d 990.
[3] Justice Tate has described this Court's plenary supervisory authority as "freewheeling and completely discretionary." See Albert Tate, Jr., Supervisory Powers of the Louisiana Courts of Appeal, 34 Tul. L. Rev.429, 431.
[4] The 1974 Louisiana Constitution in Article I, § 19 provides in pertinent part: "No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based."
[1] In the motion to quash, the defense argued:

To allow the District Attorney to once again seek the death penalty against defendant would be violating defendant's constitutional right of appeal granted to him in Louisiana Constitution 1974, Article I, Section 19. It would also violate the defendant's protection against double jeopardy by allowing the State to have a second chance to convince jury [sic] to impose the death penalty upon the defendant. Therefore, defendant moves the Court to quash the Notice of Intent to Seek Death Penalty and preclude the District Attorney from seeking the death penalty against defendant.
[2] Under Pennsylvania law, the jury was required to return a sentence of death if it unanimously found the existence of one or more aggravating circumstances and no mitigating circumstances, or if it unanimously found the existence of one or more aggravating circumstances that outweighed any established mitigating circumstances. Id., 537 U.S. at 104, 123 S.Ct. at 736.
[3] A plurality portion of the opinion authored by Justice Scalia and joined by Chief Justice Rehnquist and Justice Thomas outlined a different rationale for concluding that the defendant's life sentence did not provide double jeopardy protection. Relying on Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000) ("other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt") and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (applying Apprendi to penalty phase proceedings in capital cases), the plurality suggested that before double jeopardy principles operate to preclude a subsequent death sentence, the jury must have unanimously concluded in the earlier case that the prosecution had failed to prove the existence of aggravating factors. Sattazahn, 537 U.S. at 112, 123 S.Ct. at 740 ("In the post-Ring world, the Double Jeopardy Clause can, and must, apply to some capital sentencing proceedings. . . . If a jury unanimously concludes that a State has failed to meet its burden of proving the existence of one or more aggravating circumstances, double-jeopardy protections attach to that `acquittal' on the offense of `murder plus aggravating circumstance(s).'").

Notably, unlike Pennsylvania, capital sentencing juries in Louisiana are not required to balance aggravating and mitigating factors when determining a defendant's sentence. See State v. Koon, 96-1208, p. 27 (La.5/20/97), 704 So.2d 756, 772-73 ("Louisiana is not a weighing state. It does not require capital juries to weigh or balance mitigating against aggravating circumstances, one against the other, according to any particular standard.") (citations omitted). Thus, even if this portion of Sattazahn had been endorsed by a majority of the Court, it would apparently have limited application to defendant's case.
[4] The Fifth Circuit's unpublished opinion provided as follows:

James Crandell, Louisiana prisoner # 301148, was convicted of first degree murder and sentenced to life in prison. Concerning his application for federal habeas relief pursuant to 28 U.S.C. § 2254, our court granted Crandell a certificate of appealability on: (1) whether Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), bars Crandell's asserting his challenge to the indictment; (2) whether Crandell validly asserted denial of due process and equal protection by the alleged racially discriminatory method of selecting grand jury forepersons in Bossier Parish; and (3) whether counsel was ineffective for failing to move to quash the indictment on that basis. (Crandell's motion for appointment of counsel on appeal is DENIED.) The district court's determination that Campbell v. Louisiana, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998) (white defendant has third-party standing to challenge exclusion of blacks from grand jury), was a "new rule" of constitutional law that could not be applied retroactively under Teague is erroneous in the light of our subsequent decision in Peterson v. Cain, 302 F.3d 508, 515 (5th Cir. 2002), cert. denied, 537 U.S. 1118, 123 S.Ct. 886, 154 L.Ed.2d 796 (2003). Peterson held the Supreme Court derived its Campbell decision from its earlier decisions in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), Hobby v. United States, 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984), Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), and Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (plurality opinion). Peterson, 302 F.3d at 512-15. All of these decisions were rendered prior to when Crandell's conviction became final. In short, Campbell is not a new rule of law and Teague does not bar Crandell's due process and equal protection claims.
As for Crandell's claim that counsel was ineffective for failing to move to quash, the district court's ineffective assistance of counsel ruling was based, in part, on Campbell's being a new rule of Constitutional law.
We, therefore, VACATE that portion of the district court's judgment on these issues and REMAND: (1) Crandell's due process and equal protection claims based on the alleged racially discriminatory method of selecting grand jury forepersons in Bossier Parish; and (2) his ineffective assistance claim for counsel's failure to move to quash the indictment on that basis.
The district court judgment granting defendant federal habeas corpus relief does not appear in the record and apparently went unpublished as well. Presumably, the court found that defendant prevailed on the merits of his claim and that counsel rendered ineffective assistance of counsel by failing to file a pre-trial motion to quash, thereby waiving the error as a matter of state law. By contrast, this Court routinely rejects inmate claims that counsel's failure to file a motion to quash based on Campbell constitutes ineffective assistance because success on a motion to quash cannot prevent the state from recharging the defendant before a properly selected grand jury and reasonably competent counsel may therefore reasonably decide to husband his resources by concentrating on issues bearing directly on the question of guilt or innocence. See, e.g., State v. Ancar, 04-2689 (La.2/25/05), 894 So.2d 1133 (writ denied); State v. Washington, 04-2242 (La.6/02/05), 893 So.2d 71 (writ denied); State ex rel. Williams v. State, 00-1550 (La.2/02/01), 784 So.2d 2 (writ denied); State ex rel. Darby v. State, 99-2776 (La.4/20/00), 760 So.2d 333 (writ denied); see also State v. Woodberry, 02-0994, pp. 5-6 (La.App. 4th Cir.6/5/02), 820 So.2d 638, 643 (inmate claiming ineffective assistance based on failure to object to discriminatory selection procedure cannot demonstrate prejudice because "even if he had been successful in a motion to quash, he would ... have been reindicted.").
[1] The defendant is represented by the Indigent Defender's Office.
[2] See footnote 2 of the slip opinion.